**Robert B. KING, Plaintiff-Appellant,**

**v.**

**Margaret HECKLER, Secretary of Health and Human Services, Defendant-Appellee.**

**No. 83–3516.**

United States Court of Appeals, Sixth Circuit.

Argued May 2, 1984.

Decided Aug. 30, 1984.

Wellford, Circuit Judge, filed a dissenting opinion.

---

Sanford A. Meizlish, Barkan & Neff Co., L.P.A., Lawrence J. Ambrosio, argued, Columbus, Ohio, for plaintiff-appellant.

Joseph E. Kane, Linda Tucker, argued, Asst. U.S. Atty., Columbus, Ohio, for defendant-appellee.

Before JONES and WELLFORD, Circuit Judges, and TIMBERS, Senior Circuit Judge.[*]

TIMBERS, Senior Circuit Judge.

Appellant Robert B. King commenced this action in the district court pursuant to § 205(g) of the Social Security Act as amended, 42 U.S.C. § 405(g) (1976 & Supp. V 1981), to review a final determination of the Secretary of Health and Human Services (Secretary) which denied his application for disability insurance benefits. The court, John D. Holschuh, *District Judge*, took on submission cross motions for summary judgment. In an opinion filed May 31, 1983, the court granted the Secretary's motion, denied appellant's motion, and affirmed the decision of the Secretary. From the judgment entered thereon, this appeal has been taken. We reverse and remand for an award of benefits.

**I.**

At the time of filing his application for disability insurance benefits on November 7, 1980, appellant was thirty years of age. He lived in Cambridge, Ohio, with his wife and two children. He had been born in Ohio. He completed his education through

---

[*] Of the Second Circuit, by designation.

the twelfth grade. Since 1968, he had worked at various jobs, including a baker's assistant, truck driver, grave digger, security guard sergeant, janitor and busboy. His primary work experience had been as a grave digger, in which capacity he had been employed from September 1970 to June 1974; and as a security guard sergeant from June 1977 to October 20, 1980 —just 18 days prior to the filing of his application. The security guard position consisted of filling out reports, supervising other employees, and a substantial amount of standing and walking.

Appellant's claim of disability is based on his assertion of constant and debilitating back pain in the lumbar sacral region resulting from what various medical doctors have diagnosed as degenerative disc disease. Appellant claims that he first injured his back in 1972 when he fell from a truck while unloading a lawn mower. His back was X-rayed at that time, but he sustained no injury that prevented him from returning to work. He experienced no significant back pain again until June 1974, when he ruptured a disc while digging a grave.

Appellant at that time was hospitalized at Doctor's Hospital North, in Columbus, Ohio. His treatment at first consisted of myelography, spinal fluid analysis and traction. Eventually, it was determined that his condition required surgery. Dr. Hawes performed a lumbar laminectomy in July 1974. Appellant did not experience much relief from pain after this first operation.

He underwent a second back operation in March 1975, again performed by Dr. Hawes. This operation did relieve some of his pain.

Appellant continued to receive various treatments during the next two years to relieve the pain he still experienced. During this time, he received workmen's compensation benefits since he was temporarily totally disabled. In June 1977, he commenced work as a Pinkerton security guard.

In July 1978, appellant slipped and fell on wet grass. This accident aggravated his back condition. After receiving treatment,

however, he returned to work. He continued to work until October 20, 1980. At that time, the pain became so acute that he could no longer continue to do the standing and walking that his job required. He was hospitalized on October 24, 1980. He received treatment consisting of supportive analgesics, muscle relaxants, pelvic traction and physical therapy. He was discharged on October 31, 1980.

Appellant's claim for disability insurance benefits, filed November 7, 1980, was denied without a hearing on January 29, 1981 on the grounds that he retained normal muscle strength, sensation and reflexes; he suffered only minor limitation on range of movement; and he therefore could return to his security guard work. He applied on March 20, 1981 for reconsideration of the disallowance of his application. This was denied on March 26, 1981, again without a hearing. On June 19, 1981, appellant requested a de novo hearing before an administrative law judge (ALJ).

Appellant appeared before an ALJ on November 13, 1981, at 9:00 a.m. The hearing lasted for one half hour. During the hearing appellant alternately sat and stood, this being necessary to relieve the pain he felt while in any one position for too long. He was the only person who testified at the hearing.

Appellant testified that he was "never without pain", that he could not stand up straight, and that the pain frequently shot through his left leg, occasionally to his right leg. At the time he was suffering from three or four headaches a day, which he was able to relieve only by taking pain killers and lying down. He testified that he could walk only about one half block at a time, and that he required a "Canadian Crutch". He could neither sit nor stand for more than ten to fifteen minutes at a time. He testified that, during the 85 mile drive with his wife to the hearing, they had to stop more than once to allow him to get out of the car. He testified to having difficulty getting in and out of the bathtub without help, tying shoes, and putting on his trousers. He spent between ten and

fourteen hours a day lying down, which he found the least painful position. He did no housework, could not lift anything of any significant weight, and left his house only infrequently. He testified to taking Percodan and Diascephen for the pain.

In addition to appellant's own testimony, several medical reports were submitted to the ALJ. The first report was that of appellant's treating physician, Dr. W.A. Larrick, of Cambridge. Dr. Larrick, a general practitioner, had been treating appellant since March 3, 1973. On November 24, 1980, when he filled out a Medical Questionaire furnished by the Ohio Bureau of Disability Determination, Dr. Larrick was seeing appellant twice a week. He reported that on October 20, 1980 appellant had sustained an acute relapse of his degenerative disease of the lumbar spine. Further, he reported that appellant suffered from "severe low back pain with muscle spasms."

A second, updated report by Dr. Larrick was submitted to the ALJ on November 17, 1981—four days after the hearing. In this report, Dr. Larrick related that he had reclassified appellant as permanently totally disabled for workmen's compensation purposes in October 1981. He stated that appellant's spine was frequently spastic and withdrawn. He noted, however, that his bad headaches had subsided in both frequency and intensity. He reported that any relief of appellant's pain could be only temporary. He concluded that

> "I have reviewed the listing of impairments and it is my opinion that Mr. King's disability would be the 105C category. It is my opinion that he is permanently and totally disabled and restricted from performing any gainful employment."

A third medical report submitted to the ALJ was the Discharge Summary completed by Dr. J. Martz, who reported on appellant's hospitalization during the last week of October 1980. Dr. Martz found positive leg maneuvers limited by pain to 60 degrees on the right and 45 degrees on the left. He also found that appellant had limitation of motion in the lumbar spine and tenderness to palpatation in the sacroiliac and lumbar joints. He further found that muscle testing was "within normal limits", distal pulses were "intact", and "no reflex changes were noted". Dr. Martz treated appellant with analgesics, muscle relaxants, pelvic traction and physical therapy. His final diagnosis was acute lumbar nerve root irritation due to nerve root adhesions on the left side.

The fourth medical report submitted to the ALJ was that of Dr. M.A. Shahabi of Zanesville, Ohio. He was an electromyographer-physiatrist designated by the Secretary to conduct a consultative examination of appellant. Dr. Shahabi saw appellant on January 22, 1981. His report was dated the following day. He noted appellant's limping gait, favoring his left leg. He reported that the lumbosacral area was tender to palpation, and that the range of motion in that area was limited by pain to 30 degrees flexion, five degrees hyperextension, and ten degrees lateral rotation and bending. According to Dr. Shahabi, appellant had sustained no muscle wasting or atrophy. He graded appellant's muscle strength in his upper and lower extremities, on a scale of one low and five high, as a five. Appellant's deep tendon reflexes were reported to have moderately decreased, down to two-plus (on the same scale). Sensation in appellant's left leg was decreased to pinprick, not related to dermatomes. In the sitting position, appellant could raise both of his legs up to 60 degrees. In the supine position, he could raise his left leg to 30 degrees, his right to 60. An X-ray report attached to Dr. Shahabi's report stated that the heights of the vertebral bodies were normally maintained, and that a transitional vertebral body was located at L5 with the L5–S1 disc narrowed. Dr. Shahabi's diagnosis, like that of the other physicians, was that appellant was suffering from a degenerative disc disease of the lumbosacral spine. He stated that no ambulatory aids were necessary.

On December 28, 1981, the ALJ filed his eight page decision. After reviewing the

evidence, he concluded that appellant's condition did not meet[1] the listed impairment at 1.05(C) of Appendix 1 of the Secretary's regulations. Turning to a determination of whether appellant had any residual functional capacity to work, the ALJ conceded, in his section on "Evaluation of the Evidence", that appellant's functional capacity had been reduced. He stated, however, that no impairment had been shown that would prevent appellant from sitting most of an eight hour work day. The ALJ continued:

> "He can do occasional walking and standing and although he appeared at the hearing with a crutch, Dr. Shahabi indicates no ambulation. aids are required. The claimant has good muscle strength and the lifting of up to 10 pounds in a seated position would not seem to be contraindicated. Therefore, I conclude that at all relevant times the claimant has had the residual functional capacity for at least sedentary work as defined by Regulations 404.1567. I further find that he does not have any non-exertional limitations resulting from his impairment."

On the final page of his decision, under "Findings of Fact and Conclusions of Law", the ALJ made the following finding:

> "3. The medical evidence shows the claimant has low back pain, however, his complaints of constant, severe and disabling pain [are] not found to be credible."

The ALJ determined, after applying Rule 201.27 of Appendix 2 of the regulations, the so-called "Grid Regulations", that appellant was not disabled.

On January 5, 1982, appellant requested a review of the ALJ's decision before the Appeals Council. His request was denied on March 4, 1982. The ALJ's decision thereby became the final decision of the Secretary.

Appellant commenced the instant action in the district court on April 22, 1982. Both parties moved for summary judgment. On May 31, 1983, the court rendered its decision as stated above. The court stated that the ALJ's first conclusion—that appellant's impairment did not meet the condition found in Listing 1.05(C) —was supported by substantial evidence. As for the ALJ's finding regarding appellant's complaints of pain, the court stated that the ALJ's "resolution of the conflicting medical evidence, as well as his decision to discount plaintiff's subjective complaints of severely disabling pain, are both supported by substantial evidence." Citing precedent in this Court, the district court added that the ALJ's opportunity to observe the demeanor of the complainant should not be discarded lightly.

On this appeal, appellant contends (1) that his impairment meets or equals the impairment in Listing 1.05(C) of the regulations and that the ALJ's conclusion to the contrary was not supported by substantial evidence; (2) that all the medical evidence supported his complaints of severe pain and that the ALJ's conclusion to the contrary was without support in the evidence; and (3) that the ALJ did not give proper weight to the medical opinion of appellant's treating physician.

## II.

### (A) Medical Opinion of Treating Physician

■ Turning first to appellant's third argument listed immediately above, we believe this is not really an independent argument, but rather is interwoven in the evaluation of the first two arguments. To the extent that appellant contends the ALJ was bound by Dr. Larrick's opinion that appellant was "permanently and totally disabled", appellant is mistaken. A determination of "disability" for the purposes of awarding disability insurance benefits is to

---

1. The ALJ actually wrote that appellant's impairment did not "equal" the condition of Listing 1.05(C), but it is clear from the context that he was evaluating appellant's claim that his impairment "met" the condition of Listing 1.05(C). Neither the ALJ nor the district court actually reached the issue of whether appellant's impairment was equivalent to the 1.05(C) condition.

be made "only if [the claimant's] physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A) (1976). This determination obviously involves consideration of many factors, only one of which is medical impairment, and it is reserved exclusively to the Secretary or to various state agencies. *Id.* § 421. Since it was not Dr. Larrick's prerogative to make the legal determination of disability, the ALJ was not bound by his conclusory statement. *Montijo v. Secretary of Health and Human Services,* 729 F.2d 599, 601 (9th Cir.1984) (per curiam); 20 C.F.R. § 404.1527 (1983). This is particularly true where, as here, the ALJ identified good reason for not accepting Dr. Larrick's determination, i.e., it was not supported by any detailed, clinical, diagnostic evidence.

██ This is not to say, however, that the *medical* opinions and diagnoses of treating physicians are not entitled to great weight. Indeed, it has long been the law that substantial deference—and, if the opinion is uncontradicted, complete deference—must be given to such opinions and diagnoses. *Lashley v. Secretary of Health and Human Services,* 708 F.2d 1048, 1054 (6th Cir.1983); *Bowie v. Harris,* 679 F.2d 654, 656 (6th Cir.1982); *Allen v. Califano,* 613 F.2d 139, 145 (6th Cir.1980); *Aubeuf v. Schweiker,* 649 F.2d 107, 112 (2d Cir.1981). We shall apply this standard in evaluating appellant's two substantive arguments on appeal.

**(B) Listing At 1.05(C)**

██ Section 404.1520(d) of the Secretary's regulations provides that, if an applicant's impairment is listed in Appendix 1, or is equal to one of those impairments, the applicant will be found disabled without any consideration of his age, education or work experience. Appellant's first argument is that his back condition is listed in Appendix 1 at 1.05(C), or, in the alternative, his condition is equal in severity to the impairment listed at 1.05(C).

The impairment listed at 1.05(C) is as follows:

"C. Other vertebrogenic disorders ... with the following persisting for at least 3 months despite prescribed therapy and expected to last 12 months. With both 1 and 2:

1. Pain, muscle spasm, and significant limitation of motion in the spine; and

2. Appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss."

In Dr. Larrick's November 1981 follow-up report, he stated that it was his opinion that appellant's disability "would be the 105C category." The ALJ did not give this statement full credit because Dr. Larrick had not included in his report the specific findings necessary to support his statement. The ALJ found that there was "no evidence of muscle weakness, sensory or significant reflex loss", which are necessary symptoms in 1.05(C)(2).

In reviewing the record to check the accuracy of the ALJ's finding in this respect, we note that Dr. Larrick, the treating physician, never discussed appellant's muscle strength, sensation or reflexes. According to Dr. Martz, who treated appellant during his hospitalization in late October 1980, muscle testing was "within normal limits" and no reflex changes were noted. Dr. Shahabi's report in January 1981 stated that no muscle weakness was noted (indeed, he rated it as highly as he could), but he reported some sensory loss and a moderate decrease in reflexes. In short, while the ALJ may not have been entirely accurate in finding there was no evidence of sensory loss, he was correct in other respects. There was no evidence indicating any muscle weakness, a symptom which is necessary to meet the impairment listed at 1.05(C) of Appendix 1. Accordingly, the ALJ's findings that appellant did not meet the impairment at 1.05(C) is supported by substantial evidence.

The alternative argument asserted by appellant—that his condition equalled the impairment at 1.05(C)—we dispose of quickly, since it is without support in the facts or the law. Section 404.1526 of the Secretary's regulations provides that an impairment is considered equivalent to a listed impairment if the medical findings—including symptoms, signs and laboratory findings—regarding the claimant's impairment, are "at least equal in severity and duration to the listed findings." 20 C.F.R. § 404.1526(a) (1983). Despite the necessity for a showing of specific alternate medical symptoms, which appellant concedes do not exist in this case, appellant argues, relying on *Thompson v. Schweiker*, 555 F.Supp. 1282 (W.D.Mo.1983), that specific alternate symptoms ("buzz words") are not necessary and that instead the Secretary should gauge the overall condition of the claimant.

We find *Thompson* to be inapposite. The doctors in that case could not agree on a reasonably conclusive diagnosis. In view of that, the district court held that it was error to match that claimant's symptoms against those of any single listed impairment; rather, the combination of impairments was believed to be "equivalent" to the disabling listed impairments "in terms of her 'total physiological well-being.'" *Id.* at 1290.

Even if the generous concept of "equivalence" used in *Thompson* were consistent with the concept outlined in the regulations, it does not help appellant in the instant case. Here all the doctors essentially agreed that appellant has sustained a vertebrogenic disorder. Hence it was not error to require that appellant establish either the symptoms listed at 1.05(C) or other symptoms that are equally severe. Not having sustained this burden, appellant cannot be said to have an impairment equal to the impairment at Listing 1.05(C).

**(C) Pain Alone as Disabling**

We now turn to what we consider the critical issue in this case: whether appellant's pain alone may be considered disabling. This issue pits the rule that substantial deference must be given to the uncontradicted opinion of the treating physician, see *supra*, against the rule that an ALJ's findings based on the credibility of the applicant are to be accorded great weight. *Beavers v. Secretary of Health, Education & Welfare*, 577 F.2d 383 (6th Cir.1978).

It is well settled that pain alone, if the result of a medical impairment, may be severe enough to constitute disability. *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524, 538 (6th Cir.1981), *cert. denied*, — U.S. —, 103 S.Ct. 2428 (1983); *Beavers, supra*, 577 F.2d at 386; *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir.1979).

The ALJ concluded that appellant was not disabled because he was capable of performing sedentary work as that is defined in the regulations. He reached this conclusion on the basis of his finding that no medical evidence had shown that appellant was incapable of sitting for most of an eight hour workday and his finding that appellant's complaints of constant, severe and disabling pain were incredible. The district court held that the ALJ was within his power in weighing the conflicting medical evidence and making his decision after considering also the credibility of appellant.

If this were the complete and accurate description of appellant's case, we would agree with the district court. Significantly, however, we find no *conflicting* medical evidence in the record on the issue of pain. *See Glass v. Secretary of Health, Education & Welfare*, 517 F.2d 224 (6th Cir.1975) (per curiam); *Noe v. Weinberger*, 512 F.2d 588 (6th Cir.1975). Dr. Larrick reported in November 1980 that appellant suffered from "severe low back pain" and in November 1981 that any relief of appellant's pain through manipulation or traction is only temporary. While it might be said that, without any other data to support these conclusions, the ALJ was justified in not according much deference to them, *see Kirk, supra*, 667 F.2d at 538, on this record we find that the reports of the other physi-

cians provide ample support for Dr. Larrick's conclusions. Dr. Shahabi, designated by the Secretary to examine appellant, reported that appellant's pain during the examination was manifest and that the pain significantly restricted appellant's movement. We do not understand Dr. Shahabi's statement that ambulatory aids were unnecessary to mean that appellant's pain was not real, but rather that such aids would have no therapeutic value. Dr. Martz' hospitalization discharge summary likewise supports the conclusion of substantial pain, manifested in significant restriction of movement.

Thus, unlike in *Kirk* and *Beavers*, there were no conflicts in the medical evidence regarding appellant's claim of pain. The expansive lead given to the ALJs in those two cases to rely on their findings of credibility is not wholly applicable here. The medical evidence, all consistent with the treating physician's opinion of severe and essentially constant pain, fully supported appellant's own testimony regarding his sedentary lifestyle, which included lying down for up to 14 hours during the daytime. Here "documented [is] a long history of fruitless treatment for severe headaches and leg and back pain." *Beavers*, 577 F.2d at 386. In light of this uncontradicted and overwhelming medical and lay evidence of appellant's severe back pain,[2] we decline to give substantial deference to the ALJ's unexplained credibility finding.[3] It was error for the ALJ, without any substantial

support, to find appellant not disabled. *See Marshall v. Heckler*, 731 F.2d 555 (8th Cir.1984) (despite ALJ's findings that complaints of pain were incredible, court reversed because of uncontradicted medical evidence of impairments leading to pain).

We hold on this record that there is but one reasonable conclusion: that due to severe and constant back pain, resulting from two laminectomies and degenerative disc disease, for which he has been receiving treatment providing only temporary relief for almost ten years, and which has caused substantial restriction of movement and curtailment of regular activities, appellant lacks the residual functional capacity to perform any substantial gainful activity.[4] He therefore is disabled.

The judgment is reversed and the case is remanded to the district court with instructions to remand to the Secretary for an award of benefits.

Reversed and remanded.

WELLFORD, Circuit Judge, dissenting.

I believe the ALJ had substantial evidence to support a finding that plaintiff is not disabled due to pain alone. The ALJ specifically found that, while the medical evidence indicated that plaintiff "has low back pain ... his complaints of constant, severe and disabling pain is [sic] not found to be credible." As the majority has noted, when a claimant's testimony of subjective

---

2. In *Marcus v. Califano, supra,* as well as in *Kirk* and *Beavers,* there was conflicting medical evidence which cried out for resolution by the ALJ, a process that would necessitate credibility determinations. In a case in which the medical evidence is entirely consistent, as here, the importance of credibility findings is substantially decreased.

Furthermore, this Court recently has indicated that an ALJ, in making a finding on the issue of pain, may not rely *solely* on the demeanor of the applicant as observed by the ALJ at the hearing. *Martin v. Secretary of Health and Human Services,* 735 F.2d 1008, 1010 (6th Cir.1984); *Weaver v. Secretary of Health and Human Services,* 722 F.2d 310, 312 (6th Cir. 1984). It follows that, where all the medical evidence consistently supports the applicant's complaint of severe back pain, as here, the

ALJ's observation of the applicant at the hearing will not provide the underpinning for denial of Social Security benefits.

3. For example, the evidence of appellant's work history, which shows a return to work after his 1978 fall despite his continued pain, does not readily support an inference that appellant is a malingerer.

4. The Secretary argues that appellant's pain is purely an exertional impairment, thus justifying the conclusion that appellant is capable of sedentary work. Even if we were to accept the premise, we think it ludicrous, in light of the minimal amount of exertion required to cause the pain, to think of hanging our hats on that distinction.

pain and discomfort is supported by clinical and diagnostic evidence, the Secretary cannot lightly reject that testimony. *Noe v. Weinberger*, 512 F.2d 588, 595–96 (6th Cir. 1975). On the contrary, however, "the mere existence of pain is not an automatic ground for proven disability." *Newborn v. Harris*, 602 F.2d 105, 107 (5th Cir.1979).

The district court held that the findings of Dr. Shahabi constituted substantial evidence in support of the Secretary's decision. On January 23, 1981, plaintiff underwent an examination and disability evaluation by Dr. Shahabi. This examination revealed a well nourished and developed obese man, walking with a limping gait. Range of motion of the lumbosacral was restricted, but the range of motion of the cervical spine was unremarkable in all directions. The upper and lower extremities active and passive range of motion and manual muscle testing was good, and no muscle wasting or atrophy was seen. Straight leg raising was restricted to 60 degrees, but unremarkable in a sitting position. Finally, x-rays reveal the heights of the vertebral bodies to be normally maintained. Also observed was a transitional vertebral body at the lumbosacral junction. The majority states that Dr. Shahabi "reported that appellant's pain during the examination was manifest and that the pain significantly restricted appellant's movement." Actually, Dr. Shahabi reported only that plaintiff experienced some pain, particularly when squatting, when the lumbosacral was subjected to palpatation and percussion; straight leg raising (in the right leg only) was restricted by pain to 60 degrees. Dr. Shahabi concluded that plaintiff had degenerative disc disease, and post lumbar laminectomy disc syndrome, however, plaintiff required no ambulatory aids.[1]

Dr. Martz, plaintiff's treating physician at Doctor's Hospital, noted that plaintiff's muscle testing of lower extremities was within normal limits, and no reflex changes were noted. The progress notes from Doctor's Hospital reveal that plaintiff is able to heel and toe walk and no muscle weakness was noted.

Were it our duty to hear this case *de novo*, this judge may agree with the result reached by my fellow judges. Our task, however, is to determine whether there is substantial evidence to support the findings of the Secretary, as affirmatively, supported by the district judge. While there is evidence of significant limitation of motion, on plaintiff's part, there is no evidence of muscle weakness, sensory loss, or significant reflex loss. Therefore, it was properly within the ALJ's role as a decision maker to hold as he did after personal observation of King. Credibility, especially concerning alleged pain, is an important factor, and the ALJ has the best opportunity to make such determinations, which should not be discarded lightly. *Beavers v. Califano*, 577 F.2d 383, 387 (6th Cir.1978). The ALJ's determination here was not based solely on his observations but also on the entire record in the case. It should also be noted that King's discomfort may well have been attributed at least in part to his obesity. He conceded that his doctor discussed the advisability of his losing weight, but at the time of hearing he was not dieting. A young man, his weight varied from as much as 325 pounds to 275 pounds. He had a left leg ¾ inch shorter than his right "with unknown etiology," according to Dr. Shahabi, who also noted "exogenous obesity" in January, 1981.

Concededly, the opinion of a claimant's long-time treating physician is ordinarily entitled to greater weight than other examining physicians. *Bowie v. Harris*, 679 F.2d 654, 656 (6th Cir.1982). The Secretary, however, is not bound by the treating physician's opinion when it is not supported by detailed clinical and diagnostice evidence. *Giddings v. Richardson*, 480 F.2d 652, 656 (6th Cir.1973). In this case Dr.

---

1. The majority understands this statement to mean that such aids would have no therapeutic value. Such a meaning is not expressed by Dr. Shahabi, nor is it logically compelling. More likely, I believe, is that Dr. Shahabi did not think that plaintiff suffered from any ailment which required such remedial measures.

Larrick, the treating doctor, appears not to have conducted any tests, and his report does little in the way of discussing any tests to which he may have had access. His conclusory statement was therefore not entitled to great or determinative effect. 20 C.F.R. § 404.1527 (1982).

I would AFFIRM the district court.