774 F.2d 1163
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Sharon Rinicella, Plaintiff-Appellant,
v.
Secretary of Health and Human Services, Defendant-Appellee.
 No. 84-3830
 United States Court of Appeals, Sixth Circuit.
 9/10/85
 
 N.D.Ohio
 REVERSED AND REMANDED
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO
 BEFORE: MILBURN, Circuit Judge, EDWARDS, Senior Circuit Judge; and SILER, District Judge*.
 PER CURIAM.
 
 
 1
 Plaintiff Sharon Rinicella appeals from the decision of the district court affirming the final decision of the Secretary denying plaintiff's request for disability and supplemental security income benefits under the Social Security Act. The final decision of the Secretary is that although plaintiff is not capable of performing her past relevant work, considering her residual functional capacity and her age, education and prior work experience, plaintiff is capable of performing light work and, therefore, must be found not disabled pursuant to 20 C.F.R. Subpart P, Appendix 2, Table No. 2, Rule 202.20. For the reasons that follow, we reverse and remand.
 
 I.
 
 2
 Plaintiff filed her application on July 27, 1981, alleging that she became disabled on February 5, 1981, as a result of a cerebral vascular accident (stroke). Plaintiff was born on October 3, 1942, and was 39 years old at the time of her hearing before the ALJ. Plaintiff completed high school and her former employment was as a waitress and barmaid in various restaurants and taverns, as well as a cashier and stock clerk in a retail business.
 
 
 3
 On February 6, 1981, plaintiff was admitted to Fairview General Hospital complaining of right-sided weakness. Upon examination, plaintiff was found to have a mild right-sided hemiparesis (muscle weakness on right side of body). A full battery of tests was ordered by plaintiff's treating physician, Dr. Good. As a result of these tests, Dr. Good determined on February 18, 1981, that plaintiff was disabled for work purposes, needed extensive physical and occupational therapy, and had a guarded prognosis. This prognosis and diagnosis remained constant during the subsequent course of his treatment of plaintiff.
 
 
 4
 In February of 1981, plaintiff underwent occupational therapy. The occupational therapist reported that plaintiff could independently bathe, dress and feed herself. The report indicated that plaintiff's hand skills were poor on the right and normal of the left and that her functions had shown significant improvement and that she should continue occupational therapy on an out-patient basis.
 
 
 5
 The record contains a letter dated April 17, 1981, from Dr. Grotz, who conducted a consultative examination. It was Dr. Grotz's impression that plaintiff might be able to show some additional recovery in the right extremities if she had an opportunity to work with biofeedback under the close supervision of a physician. Dr. Grotz also referred to a physical capacities evaluation which was carried out on April 2, 1981.
 
 
 6
 The evaluation revealed the following: Plaintiff has no problem sitting in different types of seats, although she can only sit for approximately one hour. Plaintiff can stand without difficulty; however, she tires easily when standing static or active. Plaintiff has the ability to walk without difficulty; however, she can only walk moderate distances and she has difficulty ascending inclines. Plaintiff was unable to perform a 30 foot 'shuttle' walk or run. The evaluation further revealed that plaintiff was capable of climbing approximately 30 stairs without difficulty. Her ability to crouch, kneel and crawl was limited. The grip strength of her right hand was 9 pounds with a normal of 44 pounds. The left hand showed a grip strength of 39 pounds with a normal of 37 pounds. The coordination test revealed that plaintiff had difficulty with her right hand. Plaintiff underwent a weight handling test which revealed that she could lift 6 pounds with her right hand 5 times, 8 pounds with her left hand 8 times, and 10 pounds with both hands 4 times.
 
 
 7
 The summary of the occupational report indicated that plaintiff would work well with others, would be dependable, and followed instructions well. The report further stated that the plaintiff was able to tolerate sitting for approximately one hour before her leg would fatigue and that standing was tolerated for about 15 minutes. The report indicated that plaintiff would be capable of walking approximately 30 minutes as a maximum. Plaintiff was reported to be able to tolerate 3 hours of work at a time providing she had the flexibility to get up and move around. The therapists 'felt that [plaintiff] could function in an office setting which didn't include typing. She appeared to be of at least average intelligence and could carry out tasks in a responsible manner.'
 
 
 8
 Physical therapy notes from Fairview General Hospital, dated April 8, 1981, indicate that plaintiff had shown much progress in her ability to control isolated extremity movements and that her ambulation showed 'less of a wobbling gait and more control with heel toe steppage.'
 
 
 9
 On June 30, 1981, plaintiff was seen by Dr. Todd. Dr. Todd characterized her neurological examination as being unchanged, showing good strength in the right extremities except the hand was rated as fair, as was plaintiff's right ankle dorsiflexors. Plaintiff's gait was rated as normal, although a decrease in her right extremities' coordination was noted. Dr. Todd assessed plaintiff as doing well and saw no need for formal physical therapy.
 
 
 10
 Plaintiff underwent a consultative examination on November 3, 1981, by Dr. Gundapaneni. Dr. Gundapaneni stated that plaintiff suffers from mild weakness of her right upper extremity as a probable result from the stroke. He noted that plaintiff was left hand dominant and that her gait was small-stepped.
 
 
 11
 The record also contains a letter from Dr. Good outlining the result of his follow-up evaluation of plaintiff in September of 1982. Dr. Good found no specific change in plaintiff's previous condition which was best classified as a right hemiparesis following a cerebral vascular accident. Dr. Good stated that in view of the right-sided weakness and disturbance in balance, as well as discoordination, he continued to feel that plaintiff is totally disabled.
 
 
 12
 In early October, 1982, plaintiff was interviewed and evaluated by the Ohio Rehabilitation Commission to determine what, if any, job opportunities were available to a person suffering from her impairments. The counselor noted that plaintiff's right side was 'quite drastically affected' by the stroke and that the counselor was unable to place her in a job that she could perform. The counselor stated that most clerical jobs called for typing work which plaintiff could not perform because of the stroke damage.
 
 
 13
 At the hearing before the ALJ, plaintiff testified that she 'believed' she could lift 20 pounds. Plaintiff testified that she vacuums, dusts, cooks, shops, and exercises. However, she also testified that she was unable to carry bags of groceries, bowls, pots, or pans while attempting to do these household chores. Plaintiff further testified that she could only walk one-half a block because of her foot drag and because her knee and leg would give out. She testified that she has difficulty climbing stairs and avoids activity whenever possible. Plaintiff also testified that she was unable to stand for very long without the onset of pain and fatigue.
 
 
 14
 On May 21, 1982, plaintiff was involved in an automobile accident and sustained multiple serious injuries, including a fractured jaw. Emergency surgery was performed and post-operative treatment produced improvement and good healing within three weeks after the accident. Plaintiff was discharged within five weeks upon complete recovery.
 
 
 15
 After reviewing the evidence of record, the ALJ held that plaintiff did not engage in any substantial gainful activity after the alleged onset date and that she does have an impairment, i.e., the stroke, which significantly limits her capacity to perform work-related functions. The ALJ noted that plaintiff had been deprived of the full use of her right hand and leg and, consequently, has been significantly impaired in her ability to lift, carry, push and pull, walk and stand. The ALJ stated that while plaintiff's subjective complaints of right side numbness and weakness are credible since they are supported by the objective medical evidence, her allegations that this impairment has left her completely and totally disabled is somewhat less than credible given her testimony regarding her daily activities and the weight of the medical evidence. The ALJ found that Dr. Good's physical capacities evaluation and opinion were not credible since such were not supported by the bulk of the remainder of the medical evidence, nor by plaintiff's testimony at the hearing.
 
 
 16
 The ALJ concluded that plaintiff could not return to her past relevant work. However, the ALJ did find that the evidence indicated that plaintiff retains the capacity to perform light work activity. He noted that while plaintiff cannot perform light work which involves fine, bi-manual coordination, the evidence did indicate that she retains the functional capacity to perform light work activities which require only gross manipulation with the right hand or the use of the right hand to support the left.
 
 II.
 
 17
 The ALJ found that plaintiff met the criteria for a finding of no disability under Rule 202.20, supra, which are that (1) the claimant be a younger individual, (2) a high school graduate or more, and (3) whose previous work experience was unskilled. The parties do not dispute any of these findings. The dispositive issue in this case is rather whether there is substantial evidence to support the ALJ's finding that plaintiff is capable of performing light work, a pre-condition to the use of Table No. 2.
 
 
 18
 The Social Security Regulations define light work as follows:
 
 
 19
 Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. . . .
 
 
 20
 20 C.F.R. Sec. 404.1567(b).
 
 
 21
 In this case, the Secretary found that plaintiff met her burden of establishing the existence of a medical disability which prevents her from engaging in her past relevant work. Therefore, the burden shifted to the Secretary to show that plaintiff is capable of performing some other kinds of substantial work available in the economy. In making this determination, the Secretary must consider plaintiff's age, education, past work experience and her residual functional capacity after the disabling event. 20 C.F.R. Sec. 404.1520(f). In order to be considered capable of performing a 'wide range' of light work activities, plaintiff 'must have the ability to do substantially all of these activities.' 20 C.F.R. Sec. 404.1567(b); see also Perez v. Schweiker, 653 F.2d 997, 1001 (5th Cir. 1981). In addition, the medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference. King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Of course, this is true only if the treating physician's opinion is based on sufficient medical data. Garner v. Heckler, 745 F.2d 383, 391 (6th Cir. 1984). Finally, the evidence must be analyzed viewing the record as a whole. Garner, supra, 745 F.2d at 388.
 
 
 22
 In our view, the Secretary has failed to meet her burden of showing that plaintiff is capable of performing substantially all of the activities listed in 20 C.F.R. Sec. 404.1567(b). After concluding that plaintiff cannot return to her past relevant work, the ALJ stated, 'However, the evidence does indicate that the claimant retains the capacity to perform light work activity.' The ALJ felt that plaintiff's testimony regarding her daily activities and the weight of the medical evidence supported such a finding. We disagree.
 
 
 23
 Although plaintiff testified that she could vacuum, dust, and cook on a limited basis, she also stated that she was unable to engage in many other basic household activities, including moving furniture while cleaning, carrying groceries, or emptying garbage. Plaintiff also testified that she is unable to hold trays, pots, or pans, and is unable to change sheets without resting for ten minutes afterward. Taken as a whole, this testimony cannot support a finding that plaintiff can engage in light work.
 
 
 24
 We also do not believe the 'weight of the medical evidence' supports the ALJ's finding. First, the ALJ was not justified in rejecting the opinion of plaintiff's treating physician. Although Dr. Good mistakenly noted that plaintiff was right hand dominant, when in fact she is either left hand dominant or ambidextrous, this is not a sufficient basis for rejecting his medical and clinical findings reached over a three and one-half year period. The ALJ also stated:
 
 
 25
 Dr. Good's physical capacities evaluation of October 12, 1982, which states that the claimant cannot lift or carry any object or stand for more than 10 minutes at a time is not credible since it is not supported by the bulk of the remainder of the medical evidence nor by the claimant's own testimony at the hearing.
 
 
 26
 We are unable to accept this statement. The ALJ fails to identify any particular evidence at odds with Dr. Good's finding and, in fact, much of the medical evidence supports his opinion. The Secretary's own consultative physician, Dr. Grotz, for example, reported the results of a physical capacities evaluation. While the evaluation indicates that plaintiff can stand without difficulty, it also contains the comment that plaintiff tires easily when standing.
 
 III.
 
 27
 Having reviewed the record as a whole, we hold that the Secretary has failed to meet her burden of showing that plaintiff is capable of performing light work. Accordingly, it was error to apply the 'grid' and this case must be REVERSED and REMANDED to the Secretary for input by a vocational expert. See Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 535, 540 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983); 20 C.F.R. pt. 404, subpt. P, App. 2, Sec. 200.00 (1985).
 
 
 
 *
 The Honorable Eugene E. Siler, Jr., Chief Judge, United States District Court for the Eastern District of Kentucky, sitting by designation