812 F.2d 1407
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Elaine HENDERSON, Plaintiff-Appellant,
v.
Otis R. BOWEN, Secretary, Department of Health and Human
Services, Defendant-Appellee.
 No. 86-3005.
 United States Court of Appeals, Sixth Circuit.
 Jan. 5, 1987.
 
 Before LIVELY, Chief Judge; WEICK and CONTIE, Senior Circuit Judges.
 PER CURIAM.
 
 
 1
 Elaine Henderson appeals from the district court's judgment affirming the Secretary's determination that Henderson is not disabled and is therefore not entitled to disability benefits. For the reasons that follow, we affirm.
 
 I.
 
 2
 Henderson filed her first application for disability insurance benefits on January 12, 1976 claiming inability to work as of October 15, 1975 due to arthritis, myositis, high blood pressure and a heart condition. This application was denied initially on April 2, 1976, and upon reconsideration on April 30, 1976. The matter was then heard by an ALJ who also denied benefits on October 7, 1976.
 
 
 3
 Henderson filed a second application on October 4, 1979. This application was denied by administrative action on December 5, 1979. No appeal was taken from this denial. Therefore, it became the final determination of the Secretary on the issue of disability on or before December 5, 1979.
 
 
 4
 Henderson filed her third application, which is the basis of this appeal, on June 13, 1983, claiming inability to work as of January 15, 1980 due to fibrositis, a heart problem and a blood disorder (monoclonal gammopathy). This application was denied initially and upon reconsideration. Henderson then requested an administrative hearing which was held on July 17, 1984. She was represented by counsel at this hearing.
 
 
 5
 Henderson testified at the hearing as to her personal history, her work history and her ailments. Henderson was born on December 29, 1932. She graduated from high school and completed one year of college. She last worked in March, 1981, devoting three or four days a week to selling Stanley Products door-to-door and through home parties.[1] Her prior work experience includes employment as a machine operator and inspector for the Timken Company from February, 1969, to June, 1975. She was also employed for some periods of time as a debit agent for an insurance company, and as a stock room worker.
 
 
 6
 Henderson testified that she is in constant leg, back and arm pain and that she has had chest pains for the past eight or nine years. She stated that she does not do much walking because she is afraid that it will aggravate her condition. Henderson further testified that she stopped working as a Stanley Products salesperson because she could no longer lift the heavy products. She also stated that she drives very little. When questioned about her daily activities she stated that on a typical day she usually takes a bath in the morning, watches television for a while, and may be able to straighten up the house.
 
 
 7
 The following pertinent medical evidence was introduced at the hearing. Henderson has a history of numerous hospitalizations beginning in 1975. She was admitted to Massillon Hospital in March, 1975, for evaluation of a backache and hematuria. She was treated primarily for chronic lumbosacral sprain and was discharged approximately twelve days later with no complaints. Henderson was admitted to Massillon Hospital again in November, 1975, complaining of low back pain. The diagnosis was the same as her previous hospitalization. Dr. Briones, the examining physician, concluded that her symptoms were psychological in nature. Henderson was treated symptomatically and she gradually improved. She was discharged approximately two weeks after admittance. In a letter dated February 24, 1976, Dr. Paquelet reported that he had first examined Henderson on November 7, 1975, and had examined her numerous times thereafter. He noted that she was admitted to Massillon Hospital on November 7, 1975, and had undergone extensive radiographic and laboratory studies, all of which were normal. He further noted that he had referred Henderson to the Cleveland Clinic for consultation because he was unable to account for her symptoms of back pain. The record contains a letter summarizing the results of the Cleveland Clinic consultation dated March 2, 1976, written by Dr. M. Bahadori. Dr. Bahadori reported that examination of the neck showed good range of motion. There was good expansion of the lungs without rales or wheezes. There was no deformity of the spine but there was some restriction of forward bending due to paralumbar muscle spasm. X-rays of the lumbosacral spine showed degenerative disc disease with narrowing of the intervertebral disc space and hypertrophic changes at L5-S1 but no evidence of spondylolithesis. An electrocardiogram showed no diagnostic changes. EMG and nerve conduction studies were completely normal. Henderson was also given psychological tests which indicated mixed conversion reaction and psychophysiologic symptomatology. Dr. McKee (who had interpreted the tests) suggested relaxation training and counseling to help Henderson with her problems at home. Dr. Bahadori's diagnosis was generalized fibrositis and conversion reaction.
 
 
 8
 On January 14, 1980, Henderson underwent a Bruce protocal stress test for evaluation of her chest pain. The results of this test were negative during the period of exercise with an unremarkable physical exam after exercise. It was concluded that the duration of exercise was consistent with approximately normal function aerobic capacity.
 
 
 9
 Henderson entered Massillon Hospital a third time in November, 1980, for a sciatica evaluation. A myelogram was performed which demonstrated some spondylosis with no severe disc prolapse and no evidence of nerve root involvement. Epidural cortisone injections were rendered and Henderson was discharged approximately two weeks later with a final diagnosis of acute right side sciatica with lumbar spondylosis. She entered Massillon Hospital a fourth time in January, 1981, complaining of recurrent severe substernal chest discomfort. Extensive laboratory tests showed no evidence of myocardial necrosis or of any changes to warrant any myocardial ischemia. Henderson was managed as a case of myositis and bursitis. She was discharged approximately two weeks later with a final diagnosis of anterior chest wall myositis, sciatica, hiatal hernia and suspected monoclonal gammopathy.
 
 
 10
 In April, 1981, Henderson entered the Cleveland Clinic Foundation for a thorough evaluation. On physical examination she was afebrile, with regular pulse and a blood pressure of 110/70. The cardiovascular examination was unremarkable. In a letter dated May 26, 1981, Dr. Lakin, the clinic examining physician, opined that Henderson's chest pains appeared to be neuromuscular. He noted that Henderson's abdominal pains were somewhat confusing to him and he suggested use of a bran regimen. He stated that he felt Henderson did have degenerative disc disease of the lumbar spine and generalized fibrositis for which he advised her to continue her activities without any restrictions, and to use minor pain relievers such as aspirin and Tylenol for her discomfort. Dr. Larkin also noted that Henderson's total blood proteins were within normal limits. Testing for a monoclanol protein indicated a very minute amount which he presumed to be a benign monoclonal gammopathy. A biopsy was performed on a nodule in Henderson's left thyroid and the pathology report was completely benign.
 
 
 11
 Although Henderson meets the disability insured status provisions of 20 C.F.R. Secs. 404.130 et seq., only through December 31, 1980 and therefore must establish disability on or before this date, the record contains medical evidence pertaining to hospitalizations in 1982, 1983, and 1984. This evidence was also evaluated and considered by the ALJ.
 
 
 12
 Henderson was admitted to Massillon Hospital on three separate occasions in 1982. In June, 1982, she was admitted with complaints on the basis of bronchitis, back pains, and joint pains. She showed significant improvement with treatment and was discharged in July, 1982. The final diagnosis was bronchitis, generalized fibromyositis, degenerative osteoarthritis, monoclonal gammopathy, hiatal hernia, multinodular goiter, suspected arterioslerotic heart disease and chronic irritable bowel syndrome. Henderson was admitted again in October, 1982, with acute lumbar radicular syndrome. She was placed in traction, started on conservative care and eventually dismissed as improved approximately one week later. Henderson's third 1982 admittance occurred in December, 1982. She was admitted on this occasion with a two hour history of a sudden onset of severe anterior chest discomfort with pain radiating into her neck and down the inner aspects of her upper left extremity. However, chest x-rays revealed no evidence of acute disease or active pulmonary disease. She was transferred to Timken Mercy Hospital on January 6, 1983, for a cardiac catheterization. Henderson underwent the catheterization and was released on January 7, 1983. Dr. Seshagiri performed the procedure and rendered a final diagnosis of normal coronary cineangiograms, coronary spasm and hypertension by history. He further commented that the test results suggested that Henderson had spasms and he recommended medication on a daily basis.
 
 
 13
 The record contains Henderson's next hospitalization which occurred on December 9, 1983, at Bluefield Community Hospital, Bluefield, West Virginia. Henderson was admitted complaining of chest pains and the inability to breathe. She had been attending her mother's funeral. A pacemaker was inserted during this hospitalization. Henderson was released on December 20, 1983, with a final diagnosis of cardiac arrest with asystole, probably secondary to coronary spasm, and arterial hypertension with possible fibrosis of the conduction system. Upon returning home Henderson immediately entered the Massillon Hospital emergency room complaining of abdominal and chest pain. She was released on January 10, 1984, approximately three weeks later. Her course of stay in the ward was noted as unremarkable.
 
 
 14
 The record next contains records of two hospitalizations in 1984. In March, 1984, Henderson entered Massillon Hospital once again complaining of chest pains. During this hospitalization Dr. Dopriak was consulted for an evaluation of her chest pain. In a report dated March 20, 1984, Dr. Dopriak stated that Henderson clearly had an atypical chest pain history. He noted that her tests documented cardiovascular disease with hypertensive heart, but clearly nothing more serious than this. It was also noted that the diagnosis of coronary artery spasm as the cause of pain was unlikely. In summary, he determined that her chest pain was most likely non-cardiac in etiology. He also went on to state that the reason for her pacemaker was not entirely clear to him.
 
 
 15
 The most recent hospitalization contained in the record occurred on June 7, 1984. At this time Henderson entered Massillon Hospital complaining of leg and abdominal pain. She was stabilized and discharged on June 22, 1984. She was prescribed Tylenol # 3 and scheduled for an office visit in approximately one month. X-rays of both knees and of the right shoulder were negative. A nuclear bone scan of the entire skeleton was generally normal except for some indication of arthritic change in the left knee. Special images of the lumbar spine were unremarkable.
 
 
 16
 On October 24, 1984, the ALJ issued his decision, finding that Henderson was not entitled to disability benefits pursuant to 42 U.S.C. Secs. 416(i) and 423. The ALJ found that Henderson's impairments consisted of hypertension well controlled, minimal monoclonal gammopathy, degenerative disc disease of the lumbar spine and generalized fibrositis; however, he concluded that Henderson did not have any impairment or impairments which significantly limited her ability to perform basic work-related functions prior to December 31, 1980. This is the last date upon which Henderson meets the special earnings requirements to be eligible for disability insurance benefits. Therefore, pursuant to 20 C.F.R. Sec. 404.1521, he found that Henderson did not have a severe impairment. He further found that Henderson's allegations of disabling pain and discomfort were not supported by the medical record.
 
 
 17
 Henderson timely filed the instant action with the district court pursuant to 42 U.S.C. Sec. 405(g). This appeal was referred to a magistrate. The magistrate filed his report and recommendation on November 6, 1985, recommending entry of summary judgment in favor of the Secretary. The district court adopted and incorporated this report on November 27, 1985, thereby affirming the Secretary's decision to deny benefits. This timely appeal followed.
 
 II.
 
 18
 Pursuant to 42 U.S.C. Sec. 405(g), the Secretary's factual findings are conclusive if supported by substantial evidence. Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389 (1971). This court cannot base its decision entirely upon a single piece of evidence; the record must be evaluated as a whole. Hephner v. Mathews, 667 F.2d 524 (6th Cir.1981).
 
 
 19
 This deferential standard of review applies only to resolving issues of fact and credibility. Wiggins v. Schweiker, 679 F.2d 1387 (11th Cir.1982); Beavers v. Secretary, 577 F.2d 383, 387 (6th Cir.1978). Even if the reviewing court would resolve the factual issues differently, the Secretary's determination must stand if it is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058 (6th Cir.1983).
 
 
 20
 Eligibility for social security disability benefits payments is determined pursuant to a five-step sequential evaluation process. Kirk v. Secretary of Health & Human Services, 667 F.2d 254, 528 (6th Cir.1981), cert. denied, 461 U.S. 957 (1983). The second step requires inquiry into whether the claimant has an impairment that significantly limits his or her ability to perform work-related functions; if not, then on the medical evidence alone the claimant is determined to be not disabled. Id. at 528. Henderson argues that the determination by the Secretary that she did not have any impairment or impairments which significantly limited her ability to perform basic work-related functions prior to December 31, 1980, and therefore was not disabled, is erroneous. Henderson relies on the medical reports in the record as well as her complaints of pain as establishing evidence of a severe impairment. She contends that the ALJ failed to consider her complaints of pain. She also contends that her complaints of pain, in addition to the November, 1980 hospital diagnosis of acute sciatica right side, with lumbar spondylosis, and the May, 1981 Cleveland Clinic report of degenerative disc disease and generalized fibrositis establish the existence of a severe impairment beyond any reasonable doubt.
 
 
 21
 Henderson's contention that the ALJ failed to consider her complaints of pain is without merit. The ALJ delineated Henderson's complaints of pain in his report. The ALJ also specifically found that Henderson's allegations of disabling pain and discomfort were not credibly supported by the medical record. Upon reviewing the record, we agree with this determination. Furthermore, we believe that there is substantial evidence in the record, when evaluated as a whole, to support a finding of not disabled.
 
 
 22
 Pain alone, if the result of medical impairment, may be severe enough to be disabling for social security purposes. King v. Heckler, 742 F.2d 968 (6th Cir.1984). However, in the instant case, Henderson was advised to continue her activities, without any restrictions, and to use minor pain relievers such as Tylenol and aspirin for her discomfort after being thoroughly evaluated at the Cleveland Clinic in April, 1981. This examination took place within four months after Henderson's disability cut off date and therefore is relevant in determining her medical status prior to this date. Additionally, although Henderson's November, 1980 hospital records note significant low back discomfort, the records also state that there was no severe disc prolapse. Although Henderson was given cortisone injections for her pain at this time, the record contains no evidence of such treatment either prior to or shortly after this hospitalization. This one incident establishes that Henderson did have pain at that time. However, when considered with the report of the Cleveland Clinic examination a few months later, there was substantial evidence to conclude that the pain was not disabling when only mild medications were recommended and Henderson was advised not to restrict her activities. One month of severe back and leg pain due to sciatica, followed by the recommendation of aspirin or Tylenol use with no physical restrictions would indicate that Henderson's ability to perform basic work-related functions was not significantly limited. Furthermore, the record contains reports of a January, 1981 hospitalization which revealed that x-rays of Henderson's spine were normal. This medical evidence, in addition to Henderson's testimony that she devoted three or four days a week to selling Stanley Products door-to-door and through home parties up to either November, 1980, or March, 1981, does not indicate a severe impairment during the pertinent period.
 
 
 23
 The medical records also provide substantial evidence that Henderson did not suffer from a severe cardiac impairment prior to her disability cut-off date. Henderson's January, 1980 stress test was within normal limits. Laboratory tests rendered in January, 1981, showed no evidence of myocardial necrosis or any changes to warrant myocardial ischemia. Additionally, the Cleveland Clinic examination of April, 1981, revealed no heart damage or arteriosclerotic heart disease. In sum, we believe that there is substantial evidence to support a finding that Henderson did not have any impairment or impairments which significantly limited her ability to perform basic work-related functions prior to December 31, 1980. Therefore, a finding of not disabled must be made.
 
 
 24
 Having concluded that substantial evidence supports the Secretary's decision to deny disability benefits to Henderson, we accordingly AFFIRM the judgment of the district court.
 
 
 
 [1]
 Social Security forms completed by Henderson as well as parts of her testimony establish March, 1981 as the date upon which she stopped working, although we note that she also gave conflicting testimony stating that November, 1980 was the date upon which she last worked