816 F.2d 681
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Carolyn MACY, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 86-3259.
 United States Court of Appeals, Sixth Circuit.
 April 7, 1987.
 
 Before ENGEL and GUY, Circuit Judges, and PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Claimant, Macy, filed an application for disability benefits on November 2, 1982, alleging disability since July 19, 1981, due to a back and foot injury. Her claim was denied initially and on reconsideration, whereupon she filed a request for an administrative hearing. Following the hearing, the administrative law judge (ALJ) issued his denial of benefits on November 3, 1983, which was upheld by the Appeals Council on January 26, 1984, thereby becoming the final decision of the Secretary. Claimant appealed the denial to the district court which, upon recommendation of a magistrate, affirmed; this appeal followed. Finding substantial evidence to support the Secretary's decision, we affirm.
 
 I.
 
 2
 Claimant's problems apparently began on July 19, 1981, when she stepped on a "foreign object" while walking in the pool area at a Holiday Inn and immediately felt pain in her left heel. Although she was treated at a local emergency room, she continued to experience pain in her left foot and leg. In September, 1981, she was admitted to Grandview Hospital, where the previous scar and a small foreign body resembling a thorn was removed from her left heel. Because she was complaining of back pain as well, she was placed on physical therapy and a TENS unit,[1] with results described as "quite good."
 
 
 3
 Over the next two years, plaintiff was hospitalized several times for low back and leg pain, as well as complaints of chest pain. In general, all of her test results were essentially within normal limits, although a lumbar myelogram performed in August of 1981 revealed "mild" extra-durat prominence at the L5 level. However, the nerve rootlets were all symmetrical and normal at all disc levels. To confirm the presence of the extradural defect, a CT scan was done. The results showed an area of increased density at the L5 level; however, no conclusion could be made diagnosing this increased density as an extruded intervertebral disc or any other significant abnormality. An EMG done in April of 1983 revealed "chronic L5-Sl radiculopathy" but with no evidence of active denervation or peripheral neuropathy. All of claimant's cervical, pelvic, and chest x-rays and other tests were within normal limits.
 
 
 4
 In addition to medical records, claimant has also presented psychological evidence in support of her claim of disability. That evidence reveals that she is of average intelligence and that her memory, judgment, perception, and concentration were all good. Her chief difficulty arose from problems involving her son's threatening behavior and her inability to assert herself with her mother, with whom she is currently living following her divorce in 1982. The progress notes of her treating psychologist at Darke County Mental Health Center show sporadic but continued improvement in her assertiveness and decreasing reliance on medication, as well as progress in her ability to cope with stress. A psychological evaluation conducted by Dr. Bowers in April of 1983 revealed that "she displays a low frustration threshold and there is evidence to suggest that she finds it difficult to deal with extreme situations of stress." Dr. Bowers also found that claimant's reactions suggested "a significant psychogenic[2] overlay in her reactions to her physical condition ... [and that] in view of the depression reflected in the psychological test data and Mrs. Macy's premorbid personality pattern characterized by feelings of inferiority and inadequacy, referral for treatment in a pain clinic should be considered."
 
 
 5
 Reports submitted by claimant's primary treating physician, Dr. Siehl, also recognized a "considerable degree of psychogenic overlay" in her responses. As of March, 1983, he opined that claimant would be unable to sit, stand, walk, or alternately sit and stand for more than two hours at a time, and that she was currently unable to engage in even sedentary work activities on a sustained basis.
 
 II.
 
 6
 The ALJ concluded that the medical evidence established the existence of a low back impairment which significantly limits claimant's ability to perform basic work activities. However , based on the degree of improvement she had shown during seven months of treatment, he did not find her psychological impairment to meet the durational requirement of one year . Therefore, while severe, her back impairment and associated pain neither met nor equalled the Listings of Impairments contained in Appendix I to Subpart P, nor prevented her from engaging in her past relevant work, which was sedentary in nature.[3] The ALJ specifically noted that "[t]he objective evidence is sufficient to establish the existence of a low back impairment which could reasonably account for some of the pain alleged by the claimant. The findings on physical examination, however, are relatively mild, an indication that the claimant's testimony regarding the severity of that pain is somewhat exaggerated."
 
 
 7
 Claimant argues on appeal that, under our holding in King v. Heckler, 742 F.2d 968 (6th Cur. 1984), it was error for the Secretary to conclude, on the basis of uncontradicted medical and psychological evidence, in addition to the uncontroverted opinion of claimant's treating physician, that she was not disabled. Of course, our review is confined to the task of ascertaining whether substantial evidence in the record supports the Secretary's determination. 42 U.S.C. SS 405(g). Moreover, an ALJ's findings based on credibility determinations will not be lightly discarded. Beavers v. Secretary of Health, Education & Welfare, 577 F.2d 383 (6th Cir. 1978). While pain alone may be severe enough to constitute disability, Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 538 (6th Cir. 1981), cert denied, 461 U.S. 957 (1983), such conclusion is precluded "unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce" pain of the severity alleged. 20 C.F.R. Sec. 404.1529.
 
 III.
 
 8
 We held in King that, in the absence of any conflicting medical evidence of record, claimant's allegations of severe and constant pain were sufficient to support a finding of disability. 742 F.2d at 975. However, that case is distinguishable in that the claimant in King had undergone two lumbar laminectomies and had been diagnosed as suffering from a degenerative disease over a per iod of ten years. In contrast, claimant's medical evidence, while giving some indication of a spinal abnormality as early as 1979, does not reveal any degenerative changes or evidence of i nerve root impingement or peripheral neuropathy associated with a progressively worsening condition. Moreover,nosurgical inter' vention has ever been suggested to claimant, in part because of the recognized psychogenic factor which exacerbates her symptoms. Claimant testified at the hearing that she cannot lift anything over eight ounces, can only stand for five to ten minutes and sit for only thirty minutes, and that, other than sleeping and eating, her daily activities are largely non-existent, except that she will answer the telephone if it is within easy reach and occasionally tries to read large-print books from the library. She further alleged that walking the two blocks to the administrative hearing was going to require four days in bed to recuperate, and that she has been forbidden to drive or walk by her physician. If credited, claimant's account of her condition clearly would render her totally incapacitated; however, in the absence of any medical findings tO SUpport such a restrictive existence, and in light of the observations of several of her physicians as to the existence of "psychosomatic exaggeration: or "functional overlay," we conclude that the ALJ properly discounted her hearing testimony. There are no physicians' recommendations in the record to support claimant's contentions as to her inability to drive or walk.
 
 
 9
 With respect to her mental impairment, while it is reported that she has difficulty dealing with extreme stress and presents "some" of the characteristics of a somatization disorder, these , findings do not render her unable to engage in her past relevant work, none of which could be characterized as "extremely stressful." Finally, one of her treating psychologists has expressly reported that, with continued therapy, she will be capable of maintaining full-time employment. Therefore, although the opinion of claimant's primary treating physician is ordinarily entitled to great weight, the Secretary is not bound by that opinion in the absence of clinical and diagnostic medical evidence in the record. v. Richardson, 480 F.2d 652, 656 (6th Cir. 1973). Despite the lack of conflicting evidence, we find that claimant's own medical evidence of record does not support a finding of disability. Therefore, the Secretary's conclusion of non-disability is AFFIRMED.
 
 
 
 [1]
 A TENS unit is a small electronic unit with skin electrodes which emits low voltage electricity which interferes with nerve impulses, thus interfering with pain reception
 
 
 [2]
 The term psychogenic is defined as "of intrapsychic origin; having an emotional or psychologic origin (in reference to a symptom), as opposed to a physicogenic, or organic, basis." Dorland's Illustrated Medical Dictionary, Twenty-Fifth Ed. 1974
 
 
 [3]
 Claimant was forty-one years of age at the time of her administrative hearing. She had graduated from high school and had taken additional three-month programs in airline and weather training and real estate and business law. Her employment record shows that she held numerous, relatively short-term, positions as sales representative, employment counselor, bank teller, fast food worker, vacation relief at a travel agency, and airline reservationist and supervisor. Her most recent employment, dating from June of 1980 through July of 1981 (mostly part-time), was as a college admissions representative, where her duties consisted of recruiting within a given territory, aiding students in course selection, and familiarizing them with the college