793 F.2d 1293
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
HERBERT D. NASS, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 84-3978
 United States Court of Appeals, Sixth Circuit.
 5/20/86
 
 AFFIRMED
 N.D.Ohio
 On Appeal from the United States District Court for the Northern District of Ohio
 Before: KRUPANSKY, GUY, and BOGGS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff, Herbert Nass, appeals from a district court decision affirming the decision of the Secretary of the Department of Health and Human Services (Secretary) denying his claim for disability insurance benefits. The issue before this court is whether the Secretary's decision is supported by substantial evidence.
 
 
 2
 Plaintiff filed his application for disability insurance benefits on June 22, 1981, alleging an onset date of March 26, 1979. His application was initially denied, and he requested a hearing which was held on August 19, 1982. On December 29, 1982, the administrative law judge (ALJ) found that plaintiff was not disabled since he retained the residual functional capacity to perform light work. The Appeals Council affirmed, and plaintiff sought judicial review of the Secretary's decision in the United States District Court for the Northern District of Ohio. The case was referred to a United States Magistrate who recommended affirming the ALJ. Plaintiff filed objections to the magistrate's report and recommendation, and on October 12, 1984, after a de novo review, the district court adopted the report and recommendation. For the following reasons, we affirm.
 
 
 3
 Plaintiff was born on December 1, 1926, making him 56 years old at the time of the hearing. He was formally educated through the ninth grade, and has relevant work experience as a trailer mechanic and a shipping and receiving clerk. A vocational expert testified that this work was semi-skilled to skilled and heavy in nature. The work yielded some transferable skills, including record-keeping abilities, mathematical skills, and an ability to work with precise measurements. Plaintiff has not worked since March 26, 1979, when he was injured while working.
 
 
 4
 At the hearing, plaintiff testified that he is no longer able to work due to pain in his neck, shoulders, and back, as well as diminished strength in his right hand. He claimed that he cannot sit or stand for very long without becoming very uncomfortable. If he reaches above shoulder level, his muscles frequently tighten up, causing pain in his shoulder and back.
 
 
 5
 Despite plaintiff's complaints of pain, his testimony indicates that he still remains relatively active. His current activities include: driving his car daily; visiting the health club approximately three times a week where he exercises, swims, and uses the sauna; gardening, including picking weeds, tomatoes, and peppers; drawing and painting in his basement, sometimes for a half a day; cooking; grocery shopping; and reading. With respect to reading, plaintiff testified that 'sometimes I'll pick up a book and I'll sit down and I won't quit till I finish. Sometimes I'll read [until] the late hours of the night if I get interested in a book.'
 
 
 6
 The medical records indicate that plaintiff was injured at work on March 26, 1979, when he was hit in the back by a falling door. He suffered a severe contusion to the lumbosacral and dorsal back and was hospitalized. He was treated conservatively for the condition and released with advice to take Tylenol No. 3. He was readmitted to the hospital three months later and found to have a chronic sprain of the lumber spine. At discharge, he was told to limit his activities and avoid heavy work.
 
 
 7
 One year later plaintiff was again hospitalized, and this time a mylelogram revealed spinal stenosis at the L2, 3, 4, and 5 levels. A decompressive laminectomy was performed and plaintiff did well post-operatively.
 
 
 8
 Medical reports by plaintiff's treating physician, Dr. Winslow, indicate that in his opinion plaintiff is 'permanently and totally disabled,' due to chronic bronchitis and chronic sprain of the lumbar spine. He notes that plaintiff is unable to rise from a squatting position or walk on his heels. In his opinion plaintiff can only do occasional lifting of up to ten pounds and cannot lift anything above shoulder level. Dr. Winslow opined that plaintiff only has the residual capacity to stand or walk for one hour in an eight-hour work day, and can only sit for two hours.
 
 
 9
 Dr. Yetis, who examined plaintiff for the purpose of this disability determination, found plaintiff to suffer from a history of low back pain and a weakened right-hand grip. He noted that plaintiff is able to climb six steps; carry weights of 15-20 pounds for distances up to 30 feet; mow the lawn and pick weeds; and sit for 30 minutes at a time. Plaintiff complained of a frequent cough and intermittent pain in the lumbosacral area which radiates to the hips. However, plaintiff's lower extremities are not affected by the radiating pain.
 
 
 10
 Dr. Ellenberg, a rehabilitation specialist, also examined plaintiff for the purposes of the disability determination. He made the following objective medical findings: plaintiff's lower extremities have a normal range of motion, while his upper extremities produce pain on full abduction; plaintiff has a normal gait, normal toe and heel walking, and a normal ability to squat; plaintiff has the ability to flex forward to about 80 degrees with complaints of pain; there is no evidence of ongoing nerve root compression; plaintiff has a mild pericapsulitis in his right shoulder; and, plaintiff has a mild limitation of neck range of motion. With respect to plaintiff's functional capacity, Dr. Ellenberg stated:
 
 
 11
 I feel that standing/walking probably could be carried out through six to eight hours in an intermittent fashion, about 30 to 45 minutes at a time. He would be limited to lifting about 35 pounds occasionally, 10-15 more frequently. He would be limited in anything that requires prolonged extension of his neck (more than about five minutes at a time) or more frequently than two to three times an hour. He could not be in a work situation where he needs frequent neck motions. He would be limited to lifting above the shoulder up to 25 pounds occasionally, five pounds somewhat more frequently.
 
 
 12
 Regarding plaintiff's bronchitis, plaintiff was hospitalized for shortness of breath on December 23, 1979. After treatment with antibiotics his condition improved and he was discharged with instructions to avoid 'heavy work.' Dr. Yetis has since described plaintiff's shortness of breath as intermittent and concluded that his pulmonary functions are within normal limits.
 
 
 13
 Finally, the record contains a report by Dr. Webster, who examined the plaintiff on behalf of the Fruehauf Corporation. Dr. Webster concluded that plaintiff's back ailments preclude him from heavy work, although plaintiff would be capable of performing light work.
 
 
 14
 Dr. Walsh, a vocational expert, testified at plaintiff's hearing. When asked to assume all of the limitations found in Dr. Winslow's reports, the vocational expert testified that no jobs exist which plaintiff could perform. When asked to assume the limitations described in Dr. Ellenberg's report, the vocational expert concluded that plaintiff could perform some jobs. Finally, when asked to assume Dr. Ellenberg's assessment as to plaintiff's residual functional capacity, but to further diminish plaintiff's ability to grip with his dominant right hand, the vocational expert still concluded that a significant number of jobs exist which plaintiff could perform. These jobs include inventory clerk, parts tester, order detailer and supply clerk, and exist in significant numbers in the Lucas County area.
 
 
 15
 Based upon a thorough examination of all the evidence in the record, the ALJ concluded that plaintiff is not disabled. On appeal plaintiff presents two arguments. First, plaintiff argues that the ALJ did not accord proper weight to the opinions of Dr. Winslow, plaintiff's treating physician. Second, plaintiff alleges that he was denied due process by not being 'permitted to properly cross-examine the vocational expert.'
 
 I.
 
 16
 In his medical reports, plaintiff's treating physician, Dr. Winslow, states that due to plaintiff's unstable lumbosacral spine and bronchitis, plaintiff is 'permanently and totally disabled.' As the basis for his opinion, he notes significant limitations in plaintiff's ability to rise from a squatting position, walk on his heels, lift more than ten pounds, and sit for more than two hours or stand for more than one hour. Plaintiff argues that the ALJ erred in not according Dr. Winslow's opinions substantial weight.
 
 
 17
 In King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984), this court held that 'the medical opinions and diagnoses of treating physicians [are entitled to] substantial deference--and, if the opinion is uncontradicted, complete deference.' With respect to Dr. Winslow's opinion that plaintiff is totally and permanently disabled from work, this opinion need not be accorded special deference. Disability is a legal, not medical, conclusion. King clearly states that substantial deference need only be accorded a physician's 'medical opinions and diagnoses.' Id.
 
 
 18
 In this case, the ALJ not only disagreed with Dr. Winslow's ultimate conclusion, but also with some of the doctor's predicate findings as to plaintiff's residual functional capacity. These findings were due substantial, but not complete, deference. Since there is substantial evidence in the record contradicting Dr. Winslow's findings, we find no error in the ALJ's rejection of these findings. For instance, Dr. Winslow stated that plaintiff cannot rise from a squatting position. This finding is contrary to both Dr. Ellenberg's report and plaintiff's own testimony. Plaintiff testified that he can pick weeds in the garden for up to one-half hour before getting stiff. Dr. Winslow further found that plaintiff cannot walk on his heels or lift more than ten pounds. These findings are contradicted by the reports of both Dr. Ellenberg and Dr. Yetis. Finally, Dr. Winslow's finding that plaintiff can only sit or stand for a very limited period is inconsistent with plaintiff's own testimony. He testified that he sometimes sits down and reads an entire book. On occasion, he also spends half of a day in his vasement drawing and painting. These activities are inconsistent with a finding that plaintiff can only sit or stand for very limited periods.
 
 II.
 
 19
 Plaintiff next requests that this case be remanded for further testimony since he was not permitted to properly cross-examine the vocational expert. In this respect, plaintiff is not arguing that his counsel was not allowed to cross-examine the vocational expert; rather, he argues that the answers which counsel received were unresponsive.
 
 
 20
 Plaintiff complains primarily about the answers counsel received in response to his inquiries about the effect of plaintiff's diminished strength in his dominant hand. The following colloquy provides the basis for his complaint:
 
 
 21
 Q. Isn't it true that to be competitive and--in any of these types of jobs that the dominant hand a person has to be able to use the dominant hand fairly well to perform competitively, speedily, accurately?
 
 
 22
 A. Well I think it's been pointed out he has use of his dominant hand but there may be some reduction in terms of efficiency.
 
 
 23
 Q. Well the question you were asked by Judge Schoenfeld I think indicated that he had significantly diminished use--okay--and that about--that significant--my question to you again is isn't it true that in any of these jobs that a person has to be able to use the dominant hand fairly well and fairly accurate and fairly quickly to be competitive?
 
 
 24
 A. Well again Mr. Manring I think that, I think that the fact that he has significant reduction in terms of--hand is limiting but not disabling.
 
 
 25
 I've seen, I've seen one armed workers perform--drill press operation.
 
 
 26
 Q. I'm not going to ask it again.
 
 
 27
 A. Well if that's not response enough I'd be glad to try to clarify it. I would say in a way I think what you're asking me is can he work with one arm or hand and in my opinion yes he can.
 
 
 28
 TR. 88-89 (misspelling corrected). While it may be true that p aintiff's attorney was not receiving the answers which he desired, we conclude from the transcript before us that the vocational expert was not being unresponsive. The vocational expert responded to all of plaintiff's questions and even offered to clarify his responses. However, plaintiff's attorney simply abandoned this line of questioning when he was unable to elicit the desired testimony. In addition, we note that plaintiff's attorney never objected to the witnesses' alleged lack of responsiveness. Instead, plaintiff's attorney saved his objection until appellate review of the ALJ's opinion, when the court is required to reach a conclusion based solely upon a bare reading of the transcript. Based upon this transcript, we find that the vocational expert was not unresponsive.
 
 
 29
 Accordingly, the judgment of the district court is AFFIRMED.