811 F.2d 606
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
William D. MATTINGLY, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 85-6152.
 United States Court of Appeals, Sixth Circuit.
 Dec. 4, 1986.
 
 Before KENNEDY and NORRIS, Circuit Judges, and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Claimant William D. Mattingly appeals from a district court order upholding the Secretary's determination that he was not disabled and, therefore, not entitled to Disability Insurance Benefits.
 
 I.
 
 2
 Claimant's current application for Disability Insurance Benefits was filed on March 3, 1984, alleging a disability onset date of July 6, 1983. A prior application for benefits which alleged an earlier disability onset date had been denied by an Administrative Law Judge (ALJ) on July 5, 1983, which was affirmed by the Appeals Council on October 5, 1983, and the United States District Court on August 1, 1985.[1] While both applications claimed disability due to lower back pain, the claimant alleges that his condition has worsened significantly since the time his prior application was denied. Although his current application must be judged in light of the new medical evidence in the record, it is necessary to review the earlier medical reports as well in order to understand the origins of his physical impairments and to determine whether his condition has deteriorated.
 
 
 3
 William Mattingly was born on March 20, 1932, and was 52 years old at the time of his last hearing. He finished the eighth grade and is able to read and write. From 1956 to 1978 he worked for a company called Tube Turns where he was a forger and then a grinder. These jobs required much heavy lifting and were performed under high temperatures. He first injured his back while lifting an object at work in 1974, but returned to the job about four weeks later. He continued to work until June 21, 1978, when his back problems apparently became too bad to continue.
 
 
 4
 Dr. Badenhausen, in an orthopedic report dated November 13, 1980, stated that he had seen the claimant since October 3, 1977. He reported that claimant underwent a spine fusion on July 25, 1978.[2] Although the fusion solidified, as evidenced by tomograms taken of his lumbosacral spine, the symptoms remained. A back rehabilitation program did not help, and he was referred to Dr. Koons, a neurologist. Dr. Badenhausen's orthopedic report also stated, "[a]t the present time the patient has not been able to return to work because of symptoms, not because of any failure of the fusion mass."
 
 
 5
 Dr. Koons first saw claimant on June 16, 1978. In a report dated March 26, 1984, he stated that claimant had been complaining of continuous low back pain since June 1974. A discogram had revealed degenerative disc disease at L5/S1. A lumbosacral fusion was performed in July of 1978. Dr. Koons saw claimant again on October 5, 1979, and found that the fusion was solid; however, claimant continued to complain of back pain, although he was not suffering from leg pain or numbness at that time. Dr. Koons prescribed weight loss and exercise which claimant followed, but he had not experienced any relief as of March 1980. Although Dr. Koons had granted claimant a release to return to work, Tube Turns would not accept him because of a 25 pound lifting medical restriction. In September of 1981 Dr. Koons again saw claimant because of back pain. He recommended acupuncture treatment, but the treatment failed to provide claimant with relief. Subsequently, Dr. Koons used an epidural catheter to inject Marcaine into claimant's lumbar spine which also did not relieve the pain. Dr. Koons reported that an x-ray, CT scan and bone scan were all within normal limits, and a lumbar myelogram taken in August 1982 was normal. In September 1982, Dr. Koons had reported that claimant was capable of working if he could sit and stand for short periods of time, stating that claimant could sit up to one hour if he were able to get up and walk around, and he could stand for 30 to 60 minutes before having to get off his feet. He was not able to do any bending, and could not lift over 25 pounds. Although Dr. Koons talked to claimant in December 1983, he did not examine him at any time after the current application was filed.
 
 
 6
 Dr. Timir Banerjee, a specialist in neurological surgery, examined claimant in February 1984. A CT scan of the lumbosacral spine revealed that the spinal canal, thecal, and nerve roots appeared normal; no significant soft tissue lesion was detected. Despite narrowing of the disc at L6-S1, and of the 4-5 disc posterially, Dr. Banerjee reported that the CT scan was essentially normal.
 
 
 7
 Dr. Banerjee last saw the claimant on March 20, 1984. He reported in April 1984 that upon reviewing claimant's x-rays, he believed claimant had some osteoarthritis in his back as well as some narrowing of the disc space. Claimant had reported pain in the midline and right hip, which worsened when he moved about; however, Dr. Banerjee detected no specific neurological deficit. Dr. Banerjee stated that he believed claimant "had significant amounts of pain," but that claimant could possibly work in "some form of a sedentary situation that could be found where he could temporarily sit down and then stand up and move about...." On September 14, 1984, Dr. Banerjee also wrote the following: "I asked Mr. Mattingly directly if indeed he can hold a job for 6 to 8 hours with a sedentary situation and he said he could not do it and I believe him. I really believe that this man is totally disabled."
 
 
 8
 Three Physical Capacities Evaluations are in the record. Two were completed by non-treating, non-examining physicians at the Secretary's request. These reports, one by Dr. John Smith dated April 24, 1984 and the other by Dr. John Clay dated June 19, 1984, are essentially identical.[3] These state that claimant can lift or carry up to 50 pounds, and can frequently lift or carry 25 pounds, that he can stand or walk a total of six hours in an eight hour day, can sit about six hours in an eight hour day and could push and pull hand or foot controls on an unlimited basis. The reports further state that he can occasionally climb,[4] stoop, kneel and crouch, and could crawl frequently. No environmental restrictions were noted, and both doctors noted that his spine fusion was solid.
 
 
 9
 The third physical capacities evaluation form was completed by an examining orthopedic surgeon, Dr. Fadel, on March 19, 1984. He reported that claimant could sit up to one hour, stand up to one hour, and walk up to two hours, all out of an eight hour work day. Claimant could occasionally lift or carry objects only up to ten pounds, could not do repetitive pushing and pulling with his hands or repetitive movements with his feet. It was reported that claimant could bend and climb occasionally, but could not crawl or squat. Regarding environment restrictions, Dr. Fadel reported moderate restrictions on marked changes in temperature and humidity, as well as driving automotive equipment. A mild restriction was placed on exposure to dust, fumes and gases. Dr. Fadel reported that claimant would not be able to do even sedentary work. In office notes dated January 31, 1984, Dr. Fadel stated that claimant had pain on flexion and extension of his spine and with arm rotation, although straight leg raises were negative and no sensory defects were discovered. He opined that claimant may have canal stenosis or nerve root impingement, and referred him to a neurosurgeon. He did not believe that his problems were a result of his fusion noting that the myelograms, CT scans and bone scans were all normal.
 
 
 10
 A hearing was conducted before an ALJ on September 12, 1984, which lasted approximately one hour. The claimant testified that his condition had worsened since his last hearing, that he experiences constant pain in his back, across his hips and down both legs. He stated that the pain worsens when he moves about or bends, and that he had been spending more time in bed as a result of his pain. Further, claimant testified that if he bends or gets on the floor he has difficulty getting up and sometimes requires assistance. He stated that he can lift up to 10 pounds, that he can sit or stand for 45 minutes to one hour without pain, or can alternate between sitting and standing for two to three hours. He stated that it was particularly painful to sit in a straight chair like the one at the hearing. He testified that he could drive for about 30 minutes before his back hurts or he gets dizzy, and he can walk only about four to five blocks before he experiences back and leg pain. To relieve the pain, he must lie down. He stated that he also has trouble sleeping because of his pain.
 
 
 11
 Claimant also reported that the medication he had taken for back pain had not relieved the pain; although he had taken Percodan at one point for about six months, that did not help. Presently, he took milder pain medications, and also took medication for high blood pressure. In an affidavit dated September 14, 1984, claimant testified that he was allergic to dust, fumes, odors and industrial pollutions, and wears a back brace. He stated that he would have testified to these facts had he been asked at the hearing.
 
 
 12
 Claimant's wife also testified at the hearing. She stated that claimant had gotten worse "every day" and that he had trouble walking, sitting, sleeping, and putting on his socks and shoes as well as getting out of the bathtub. They rarely visit neighbors, and never go to the movies because of his problems. Both she and her husband stated that claimant does not do any housework except for occasional dusting. She also noted that he was often depressed and irritable.
 
 
 13
 On October 29, 1984, the ALJ decided that claimant was not entitled to disability insurance benefits. The ALJ concluded that although claimant could not perform his past relevant work, he was able to perform a full range of light work. The ALJ concluded that the claimant's complaints of pain were not supported by the medical evidence in that the spine fusion was solid, the x-rays, CT scans and myelograms appeared normal, and there were only minimal restrictions of motion with claimant's back as well as negative neurological findings. Further, "[h]is appearance at the hearing indicated no obvious abnormalities, he did not seem preoccupied with personal discomfort, had no difficulty with concentration, and responded to questions appropriately." Similarly, he was not taking strong medication for his pain.
 
 
 14
 Further, the ALJ believed that finding claimant capable of doing light work was consistent with Dr. Koons' report that claimant could lift up to 25 pounds. Although Dr. Fadel believed claimant could not even perform sedentary work, the ALJ did not believe this finding was supported with clinical findings and was inconsistent with Dr. Fadel's January 31, 1984 office notes. He also concluded that Dr. Banerjee's conclusion of disability was not supported by specific and complete clinical findings, as he only reported minor problems. Concluding that claimant could perform light work, the ALJ found that the grid dictated a finding of "not disabled." The Appeals Council denied review on December 13, 1984, making that decision the final decision of the Secretary.
 
 
 15
 Claimant filed a complaint with the United States District Court for the Western District of Kentucky on February 11, 1985, pursuant to 42 U.S.C. Sec. 405(g). The case was referred to a magistrate who issued a report and recommendation on October 31, 1985, holding that the Secretary's finding of no disability was supported by substantial evidence. The district court adopted this report on December 17, 1985, and this timely appeal followed.
 
 
 16
 The only issues on appeal are whether the ALJ's findings that claimant was capable of doing a full range of light work and that he was not suffering from disabling pain are supported by substantial evidence.
 
 II.
 
 17
 This court has jurisdiction on appeal to review the Secretary's decision pursuant to 42 U.S.C. Sec. 405(g) which also specifies that the Secretary's factual findings in a social security case are conclusive if supported by substantial evidence. "Substantial evidence" means " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The substantiality of the evidence must be judged by viewing the record as a whole, Allen v. Califano, 613 F.2d 139, 145 (6th Cir.1980), and " 'must take into account whatever in the record fairly detracts from its weight.' " Beavers v. Secretary of Health, Education & Welfare, 577 F.2d 383, 387 (6th Cir.1978) (quoting Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)). Even if the reviewing court would resolve the issues of fact in dispute differently, the Secretary's determination must stand if it is supported by substantial evidence. Kinsella v. Schweiker, 708 F.2d 1058 (6th Cir.1983) (per curiam).
 
 
 18
 The claimant has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability as defined in 42 U.S.C. Sec. 423(d)(1)(A).[5] If an individual is working, he or she is automatically not qualified for benefits. If a claimant is not working and has one of the "listed" impairments, see 20 C.F.R. Sec. 404.1525(a) and 20 C.F.R. pt. 404 subpt. P app. 1, benefits are owing without further inquiry. In the instant case, claimant had not worked since 1978, but he did not have one of the listed impairments; in such a case, the Secretary must next decide whether the individual can return to the job he or she previously had assuming the individual had previously worked. By showing "a medical basis for an impairment that prevents him from engaging in his particular occupation," Hephner v. Mathews, 574 F.2d 359, 361 (6th Cir.1978), the claimant satisfies his or her burden of going forward and establishes a prima facie case of disability. In the instant case, the ALJ found that the claimant was not capable of returning to his past relevant employment.
 
 
 19
 The remaining inquiry in the analysis is whether a claimant retains the capacity to work in a different kind of job, taking into consideration present job qualifications such as age, experience, education and physical capacity, and the existence of jobs to match those qualifications. 42 U.S.C. Sec. 423(d)(2)(A); 20 C.F.R. Sec. 404.1520(f)(1); Heckler v. Campbell, 461 U.S. 458, 460 (1983). If the claimant has the residual functional capacity to work, he or she is not disabled. At this step in the analysis, it is the Secretary's burden to establish the claimant's ability to work, Allen, 613 F.2d at 145; this burden can, on occasion, be satisfied by relying on the medical-vocational guidelines, otherwise known as the "grid." See 20 C.F.R. pt. 404, subpt. P, app. 2. However, "if the characteristics of the claimant do not identically match the description in the grid, the grid is only used as a guide to the disability determination." Kirk v. Secretary of Health & Human Services, 667 F.2d 524, 528 (6th Cir.1981), cert. denied, 461 U.S. 957 (1983).
 
 A.
 
 20
 The claimant first asserts that the ALJ's finding that he is capable of performing light work is not supported by the evidence. We reject this argument. First, we note that the evidence in the record dated after July 3, 1983 does not provide significant new clinical findings, nor does it suggest that the claimant's physical condition has deteriorated since his last application for benefits. Second, there is substantial evidence in the record to support the ALJ's conclusion that claimant meets the exertional requirements for "light work," as provided in 20 C.F.R. Sec. 404.1567(b). While there is also evidence in the record which supports an opposite conclusion, we may not displace the ALJ's decision merely because the conflicts in the evidence could be resolved differently. See Kinsella, 708 F.2d at 1059.
 
 B.
 
 21
 The claimant next argues that the ALJ's finding that he does not suffer from disabling pain is not supported by substantial evidence. While it is well established that pain can be disabling, see Glass v. Secretary of Health, Education & Welfare, 517 F.2d 224, 225 (6th Cir.1975) (per curiam); King v. Heckler, 742 F.2d 968, 974 (6th Cir.1984), there must be an objective medical basis for such a claim. See 42 U.S.C. Sec. 423(d)(5)(A). Although the claimant clearly suffers from low back pain, we do not believe that the evidence dictates a finding that his pain constitutes a disability. In rejecting claimant's claim of disabling pain, the ALJ did not rely solely on the demeanor of the applicant at the hearing but properly emphasized the lack of medical support for his claims. Cf. King, 742 F.2d at 975 n. 2. The medical evidence, which includes normal x-rays, neurological results and physical examinations, provides substantial evidence for the ALJ's factual conclusion that claimant was not suffering from disabling pain.
 
 
 22
 Further, we find that the ALJ's finding that claimant was not suffering from a severe nonexertional impairment resulting from his pain which would "restrict a full range of gainful employment at the designated level" of light work, is also supported by substantial evidence; therefore, his reliance on the grid was not in error. See Kirk, 667 F.2d at 537; Kimbrough v. Secretary of Health & Human Services, No. 85-5541, slip op. at 5-6 (6th Cir. July 8, 1986).
 
 
 23
 Accordingly, the district court's decision is AFFIRMED.
 
 
 
 [1]
 That decision was not appealed to this court
 
 
 [2]
 The report actually states that the operation was in "1980," but to be consistent with the rest of the record, Dr. Badenhausen must have meant "1978."
 
 
 [3]
 Dr. Smith specializes in radiology and Dr. Clay's specialties are cardiovascular diseases and internal medicine
 
 
 [4]
 Both doctors specify that claimant can never climb ladders
 
 
 [5]
 Section 423(d)(1)(A) defines "disability" as the
 inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months....