815 F.2d 79
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Morris OWEN, Plaintiff/Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant/Appellee.
 No. 85-1972.
 United States Court of Appeals, Sixth Circuit.
 Feb. 9, 1987.
 
 Before NELSON and RYAN, Circuit Judges, and ENSLEN, District Judge.*
 PER CURIAM.
 
 
 1
 Appellant in this case appeals the denial of his application for disability benefits under Subchapter II of the Social Security Act. 42 U.S.C. Secs. 416(i) & 423. An administrative law judge ("ALJ") found petitioner not to be disabled under the Act in a decision issued on September 19, 1984. The Appeals Council declined to review the administrative law judge's ruling on February 4, 1985. On November 11, 1985 the district court adopted the Magistrate's recommendation dated September 19, 1985 that it affirm the Secretary's final decision to deny appellant's application, and granted defendant's motion for summary judgment. Having reviewed the record and having considered the parties' briefs, we find that there is not substantial evidence in the record to support the Secretary's decision, and accordingly reverse the district court's decision and remand for the awarding of benefits and the determination of an appropriate onset date.
 
 Background
 
 2
 Appellant is a forty-eight year old male who was employed as an unskilled factory maintenance worker by the General Motors Corporation from 1959 until August, 1982. During the last nine years of his employment with General Motors, appellant experienced lower back pain caused by an injury he suffered in 1973 while using a jackhammer. Before his injury, appellant was working up to ten to twelve hours a day, seven days a week. After his injury, particularly in the late 1970's and early 1980's, appellant worked sporadically. During the last four years of his employment with General Motors, appellant was engaged in make work. The ALJ felt that such work "did not represent substantial gainful activity." Record at 15. Appellant testified that this work consisted of emptying paper-filled trash bags that weighed approximately five pounds, doing occasional mopping, and laying down a good deal of the time. Appellant also testified at the hearing that he does little work around the house or out in the yard; that he has difficulty sleeping at night; that he can sit or stand only for fifteen or twenty minutes before having to change position; that he can walk one to one and one-half blocks before having to sit and rest; that he has a continuous ache in his back that gets a lot worse if he overextends himself; and that he attempted to return to work on a number of occasions, but each time was unable to perform the job on a consistent basis.
 
 
 3
 Several physicians examined appellant between 1979 and 1984. His treating physician was Dr. Moyyad. The first report in the record from Dr. Moyyad is dated August 16, 1982. In that report, which actually is a note explaining Dr. Moyyad's diagnosis of appellant's condition, Dr. Moyyad stated that appellant has a "chronic lumbo sacral sprain" and that numerous attempts to send appellant back to work have ended in "total failure." He also stated that a myelogram had proven to be inconclusive. The record also contains two hospital records from 1982 in which Dr. Moyyad indicated his belief that appellant suffers from a serious back condition. In a discharge summary dated May 11, 1982 Dr. Moyyad stated that appellant "has a chronic lumbosacral pain of moderate severity with acute exacerbation with even slight exertion." On a patient history form dated November 29, 1982 Dr. Moyyad noted again that appellant suffers from a "long history of lumbosacral pain."
 
 
 4
 The next report from Dr. Moyyad is dated September, 1983. In that report, Dr. Moyyad diagnosed appellant as suffering from "chronic rather severe lumbosacral sprain with frequency." He indicated that appellant's injury was caused by heavy work with too much walking, that appellant suffers from muscle spasms, and, somewhat inconsistently with an earlier report, that no myelogram has been done on appellant. Dr. Moyyad updated this report on December 5, 1983. In that report, he indicated that appellant suffers from carpal tunnel syndrome in his right hand, but stated that appellant's "backache and chronic lumbosacral sprain" is more of a problem than the carpal tunnel syndrome. In his final report, which was a transition note to appellant's new physician, Dr. Moyyad stated that he agrees with a 1980 diagnosis which found that appellant suffers from "a chronic low back syndrome characterized By [sic] constant discomfort, But [sic] punctuated by episodes of muscle spasm which occur with Relatively [sic] small amount of activity." Dr. Moyyad also stated his belief that appellant's pain is "genuine" and noted that although appellant wants to work, he cannot because even "slight activity brings the spasm."
 
 
 5
 As we indicated above, in 1984 appellant began to see a new treating physician, a Dr. Hancock. The record contains a report from Dr. Hancock dated June 8, 1984, in which Dr. Hancock stated his belief, based on numerous treatments of appellant commencing in January, 1984, that appellant suffers from an "[a]cute lumbar lumbosacral spine sprain" and that his prognosis is "[g]uarded." Dr. Hancock also stated that appellant "should avoid bending, twisting, turning, and lifting", and concluded that appellant "is permanently disabled with little to no chance of rehabilitation."
 
 
 6
 Finally, the record contains reports from three physicians who examined appellant only once or twice. The first examination was performed in 1979, by a Dr. Norman Pollak, when appellant was on disability leave from General Motors. Dr. Pollak noted that appellant had "tenderness over the spinous processes at L5 as well as at L2, L3 and L4" and that "[m]otion at the lumbar spine is markedly guarded." After noting some other objective findings, Dr. Pollak concluded that appellant "appears to have a chronically unstable back" and stated that there were "many objective findings relating to a disabling condition of his low back." The second such examination was performed in 1982, again in connection with appellant's claim for disability benefits from his employer, by a Dr. Robert Salamon. Dr. Salamon noted, among other things, that in the seated position appellant would allow full straight leg-raising on both the left and right sides. In the supine position, however, appellant "complained of severe pain in his right lower back and buttock at about 45? of straight-leg-raising." He concluded that appellant "has a lumbar radicular syndrome, probably secondary to degenerative disc disease" and recommended that appellant not be placed in a position involving repetitive bending or heavy lifting.
 
 
 7
 Dr. Pollak examined appellant again in 1983, this time apparently in connection with appellant's application for disability retirement. In his report, Dr. Pollak noted that appellant has missed numerous days of work since his accident in 1973, and that he has been unable to handle even light-duty work. Dr. Pollak found that there were sufficient positive findings in his objective tests of appellant to support appellant's claims and history of back pain, and concluded that appellant should not return to general labor "even with restrictions." The final examination was performed by a Dr. Knocke, who examined appellant on August 16, 1984 at the request of the ALJ. Dr. Knocke noted that appellant experiences some limitation on his motion and that there "is some spasm of the paravertebral muscles in the lower lumbar area" that "does not fully relax[ ]" even when appellant lies down.
 
 
 8
 The ALJ concluded that appellant is not disabled because he retains the residual functional capacity to "perform the full range of sedentary work". In accordance with the grid system, this residual functional capacity, considered in conjunction with appellant's relatively young age, previous work experience, and twelfth grade education, mandates a finding that appellant is not disabled. See 20 C.F.R. pt. 404, subpt. P, app. 2, rule 201.18. The ALJ did not fully credit appellant's claims of back pain, finding that appellant's testimony concerning his "symptoms and limitations is not wholly credible when viewed in light of the medical evidence of conditions out of which such symptoms and limitations could be reasonably expected to arise."
 
 Discussion
 
 9
 The issue before us, of course, is whether the Secretary's decision to deny appellant benefits is supported by substantial evidence. "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C. Sec. 405(g). Substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). A mere scintilla of evidence will not suffice. Id.
 
 
 10
 We must evaluate appellant's claim in accordance with the five-step procedure established by the Secretary. 20 C.F.R. Sec. 404.1520. The first step requires the Secretary, and us, to determine whether appellant "is currently engaged in substantial gainful activity." Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 528 (6th Cir.1981), cert. denied, 461 U.S. 957 (1983). If he is not, then we must proceed to determine whether he suffers from a severe impairment, i.e., one "that significantly limits the ability to perform work-related functions." Id. If appellant's impairment is severe, then we must determine whether such impairment meets or exceeds the listings given in 20 C.F.R. pt. 404, subpt. P, app. 1. If it does, then appellant is disabled. If it does not, then we must proceed to determine whether appellant can perform relevant past work. Kirk, 667 F.2d at 528. Appellant at this point bears the burden of demonstrating that he can no longer perform his usual past work. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir.1983). If he meets that burden, however, then the Secretary must establish by a preponderance of the evidence that there exists work in the national economy that he can perform. Id. In meeting this burden, the Secretary must consider the appellant's residual functional capacity, that is, the level of work he is able to perform (sedentary, light, or medium), and his age, education, and prior work experience. Kirk, 667 F.2d at 528; see 20 C.F.R. Secs. 404.1545-.1568. At this point, the Secretary can apply the grid to determine whether there exist jobs appellant can perform, and hence whether he is disabled. We note that in making this final determination, the Secretary must support each of his findings with substantial evidence. See Wages v. Secretary of Health and Human Services, 755 F.2d 495, 497 (6th Cir.1985); Kirk, 667 F.2d at 531 n. 3; Gaines v. Secretary of Health and Human Services, 657 F.2d 99, 100 (6th Cir.1981).
 
 
 11
 In the case before us the parties do not dispute that appellant has satisfied the first four steps of this five-step procedure: (1) he is not currently engaged in substantial gainful employment; (2) he suffers from a severe impairment; (3) such impairment does not, however, meet or exceed the listings given in the regulations; and (4) he cannot perform his relevant past work. The specific issue we must decide, rather, is whether the Secretary's determination that appellant can perform "the full range of sedentary work", and thus is not disabled according to the grid, is supported by substantial evidence. We conclude that it is not.
 
 
 12
 Initially, we observe that this circuit recently held that a claimant who must alternate between sitting and standing in order to be comfortable cannot perform the full range of sedentary work available in the national economy, and thus cannot be found to possess the residual functional capacity to perform sedentary work. Wages, 755 F.2d at 498-99. In this case, appellant testified that he cannot sit or stand for more than fifteen or twenty minutes before having to change position to relieve the pain. Dr. Moyyad stated in a 1982 report, moreover, that appellant's chronic lumbosacral pain is subject to "acute exacerbation with even slight exertion." In 1984 he noted his agreement with a diagnosis that appellant suffers from back pain that is "punctuated by episodes of muscle spasm which occur with relatively small amount of activity." Dr. Hancock stated that appellant should avoid "bending, twisting, turning, and lifting". Finally, Dr. Pollak stated in 1983 that appellant could not return to work "even with restrictions."
 
 
 13
 The ALJ found that appellant has the capacity to perform sedentary work because the medical evidence does not conclusively support his claim that he is unable to perform work that requires even slight exertion, and that appellant's testimony regarding his pain and limitations thus was not wholly credible. The ALJ did not, however, identify any significant medical findings that would detract from appellant's claims of pain and limitations on his activities, and more importantly identified none that would support the Secretary's position. We in particular agree with appellant that the factors the ALJ listed in support of his conclusion that appellant's testimony was not wholly credible are not persuasive. They do not detract from appellant's testimony. This is a case, rather, in which there are "no conflicts in the medical evidence regarding appellant's claim of pain" for the ALJ to have resolved. King v. Heckler, 742 F.2d 968, 975 (6th Cir.1984). At best, one can say that some medical reports provide more support for appellant's claims than others; none of the examining physicians, however, stated that there is no medical basis for appellant's testimony. Compare Kirk, 667 F.2d at 538 (one examining physician concluded that the claimant's symptoms "could not be explained 'on the basis of any organic pathology' "). The ALJ thus erred in discrediting appellant's testimony regarding the limitations on his activities. See King, 742 F.2d at 975 (court refused to defer to the ALJ's credibility determination where no medical evidence contradicted the claimant's claim of pain); see also Weaver v. Secretary of Health and Human Services, 722 F.2d 310, 312 (6th Cir.1983) (an ALJ must cite evidence in addition to his personal observations of the claimant as support for his conclusion that the claimant's testimony was not wholly credible).
 
 
 14
 Finally, we note that the record does not contain any medical findings that specifically dispute Drs. Moyyad and Hancock's conclusions that appellant suffers muscle spasms from even a slight amount of activity and that he should avoid bending, twisting, turning, or lifting. An ALJ is not, of course, bound by a physician's determination, even one made by a treating physician, that a claimant is permanently and totally disabled. King, 742 F.2d at 972-73. The medical opinions and diagnoses of treating physicians, however, are entitled to great weight. "It is well settled that the opinions of treating physicians should be given greater weight than those held by physicians the Secretary hired and who only examined plaintiff once." Lashley, 708 F.2d at 1054. "Indeed, it has long been the law that substantial deference--and, if the opinion is uncontradicted, complete deference--must be given to such opinions and diagnoses." King, 742 F.2d at 973.
 
 
 15
 In this case, we believe that the ALJ did not properly credit the reports of Drs. Moyyad and Hancock. We also believe that the ALJ erred in finding that appellant's testimony regarding the limitations on his activities was not completely credible. We therefore conclude that the Secretary's determination that appellant has the residual functional capacity to perform the complete range of sedentary work is not supported by substantial evidence, find that the Secretary accordingly has not met his burden of establishing that there exist jobs appellant can perform, and reverse and remand for the awarding of benefits. We also observe that the onset date of appellant's disability is not clear from the record. On remand, therefore, the Secretary should make this determination.
 
 
 16
 DAVID A. NELSON, Circuit Judge, dissenting.
 
 
 17
 I am inclined to believe that the record does contain substantial evidence supporting the ALJ's conclusion that appellant's testimony regarding his pain and limitations was not wholly credible. As the court points out, for example, Dr. Salamon noted that appellant complained of severe pain at about 45% of straight-leg-raising, but in the seated position appellant would allow full straight-leg-raising. And as the ALJ has noted, "there is no positive EMG or myelographic evidence of ruptured disc and only an intermittent recording of neurologic deficits. There is no reported atrophy. There have been findings of muscle spasms on occasion, but not persistently."
 
 
 18
 I do not read the record as establishing that appellant must alternate between sitting and standing in order to be comfortable. He told Dr. Knocke, for example, that "if he sits or stands more than 15 minutes, he must shift his position;" that is consistent with appellant's testimony before the ALJ. Dr. Pollak did not think that the appellant could return to "general labor" in his present condition, but this would not seem to rule out sedentary work.
 
 
 19
 With respect, I would have affirmed the judgment.
 
 
 
 *
 The Honorable Richard A. Enslen, United States District Judge for the Western District of Michigan, sitting by designation