856 F.2d 193
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Josie GOLDMAN, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH & HUMAN SERVICES, Defendant-Appellee.
 No. 87-1596.
 United States Court of Appeals, Sixth Circuit.
 Aug. 26, 1988.
 
 Before BOYCE F. MARTIN, Jr. and WELLFORD, Circuit Judges and JAMES H. JARVIS, District Judge.*
 PER CURIAM.
 
 
 1
 Josie Goldman appeals the judgment below affirming the Secretary's denial of Social Security Disabled Widow's benefits. She argues on appeal that the Secretary's determination that she was not entitled to benefits was not based on substantial evidence. We agree.
 
 
 2
 Goldman filed her claim for Social Security Disability Widow's benefits under Section 202(e)(1) of the Social Security Act, 42 U.S.C. Sec. 402(e)(1), and 20 C.F.R. Sec. 404.335.
 
 
 3
 At the time of the administrative law judge's decision, Goldman testified that she was fifty-six years old, possessed a tenth grade education, and was the widow of a deceased wage earner. She has never worked except for about three years, off and on, when she worked for a couple hours a week as a sales person for her brother-in-law in a store. Goldman testified that she suffers from chest pain and shortness of breath, in addition to abdominal pain, hand and arm pain, swelling in her legs, bowel problems and fatigue. The chest pain begins in the middle of her chest and radiates to the neck, left arm and back. She described the pain as being of a crushing nature and that it occurred with exertion or stress. She admitted that her chest pain was relieved with the use of Nitropatches.
 
 
 4
 Goldman further testified that her shortness of breath occurred as a result of such minimal activities as sweeping, walking or changing the bed. She is unable to stand more than one-half hour due to cramps in her legs, can walk no more than one block due to fatigue and shortness of breath, experiences significant pain when bending over, and is unable to lift objects weighing more than five pounds per the instructions of her doctor. Sitting for more than five minutes causes numbness in her legs.
 
 
 5
 The medical evidence indicates that Goldman was hospitalized in April 1978 with a diagnosis of congestive heart failure. She underwent a catheterization, which revealed a hyperkinetic heart syndrome, but normal coronary arteries. In October 1979, Goldman was hospitalized for reflux gastritis. In January 1981, Goldman was hospitalized for abdominal pain with nausea and was diagnosed as having a partial bowel obstruction, post operative adhesions and gastritis. In May 1983, claimant was hospitalized for an upper respiratory infection and bronchitis. She again developed symptoms of gastritis.
 
 
 6
 Dr. R.D. Morris, Goldman's treating physician, indicated in his report dated May 30, 1984, that her chest pain was of an epigastric nature associated with shortness of breath and tachycardia even at rest. In March 1984, Goldman was hospitalized yet again for gastritis. In May 1984, Goldman was diagnosed as having congestive heart failure and a urinary tract infection, after having persistent tachycardia, dyspnea, urinary frequency and dysuria. A physical exam showed that she had tachycardia and significant peripheral edema. There was a first degree heart block and occasional premature ventricular contractions on the electrocardiogram. In his notes of May 2, 1984, Dr. Morris wrote that Goldman had multiple health problems and that she was unable to work and that he recommended total disability.
 
 
 7
 In June 1984, Goldman was hospitalized due to acute traumatic costochondritis, respiratory arrest and a urinary tract infection. EKGs, however, showed no ischemic changes.
 
 
 8
 On July 26, 1984, Dr. John Morovitz examined Goldman. In a letter of July 26, 1984, he wrote that Goldman "apparently has had some degrees of congestive heart failure." He also noted symptoms of an enlarged heart, syncope, sinus tachychardia, and, significantly, "a moderate amount of daily peripheral swelling ... edema...."
 
 
 9
 A third doctor, Dr. Richard Martens, Goldman's treating gastroenterologist, indicated in his medical report dated October 18, 1984, that Goldman was "having a lot of cardiac irregularity, congestive failure, peripheral edema," but that from a gastrointestinal standpoint she was not "disabled."
 
 
 10
 In a medical report dated December 3, 1984, Dr. Morris wrote that Goldman suffered from a shortness of breath with exertion on walking one to two blocks in association with rapid heart rate. He also found that she suffered from chronic ankle edema and that she experienced chest pain with light exertion. Dr. Morris wrote that because of her congestive heart failure, chronic recurrent abdominal pain and dependent edema, she would be unable to do jobs such as waitressing, cashier work or grocery store work.
 
 
 11
 Despite the above evidence, the administrative law judge determined that Goldman was not eligible for disability benefits. The issue before us on review is whether there is substantial evidence in the record to support the Secretary's determination. Gibson v. Secretary of Health, Education and Welfare, 678 F.2d 653, 654 (6th Cir.1982). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971). To qualify for benefits as a disabled widow under the Social Security Act, a plaintiff must show that she is at least fifty years of age but not sixty, that she is the widow of a wage earner who died fully insured, and that she has a physical and/or mental impairment which, under regulations promulgated by the Secretary, are deemed to be of such severity as to preclude her from engaging in any gainful activity. 42 U.S.C. Sec. 402(e)(f) and 432(d)(2)(B). In Wokojance v. Weinberger, 513 F.2d 210 (6th Cir.1975), we stated that "an individual cannot qualify for widow's disability benefits unless she suffers from an impairment listed in the appendix to 20 C.F.R. Subpart P, or she suffers from one or more unlisted impairments that singly or in combination are the medical equivalent of a listed impairment." Thus, the burden on Goldman when she appeared before the administrative law judge was to establish that she suffered from physical or mental impairments which matched or were of equal severity to the impairments listed in the appendix.
 
 
 12
 Despite the burden placed on Goldman of proving that her impairment precludes her from "engaging in any substantial gainful activity," 42 U.S.C. Sec. 423(d)(2)(A), a more severe test than that imposed upon wage earners seeking social security disability benefits, we, nonetheless, believe that this burden has been met.
 
 
 13
 Upon review of the record, we believe the administrative law judge in this case placed excessive reliance upon the opinion of the medical advisor, Dr. Richard Bates. Dr. Bates, who never examined Goldman, disputed the diagnoses of all the other treating physicians who had found Goldman to be suffering from coronary artery disease, congestive heart failure, and various gastric problems. We believe the testimony of Dr. Bates went beyond explaining the medical data and terms used by Goldman's treating physicians. See Richardson v. Perales, 402 U.S. 329 (1971). Dr. Bates testified that because the numerous doctors who examined Goldman could not prove their diagnoses, those diagnoses "should not be entertained." We disagree. Even Dr. Bates was forced to concede that a number of Goldman's symptoms, such as her edemas, were consistent with congestive heart failure. Because the treating physician's opinion regarding disability is to be given greater weight than that of a medical advisor who has never examined the claimant, we are forced to reverse the Secretary's determination. There is no indication that the administrative law judge relied on any additional evidence beyond that offered by the medical advisor to determine that Goldman was not disabled under the regulations. Absolute deferral to a non-treating medical advisor's testimony, contradicted by the testimony of three examining physicians, does not constitute substantial evidence or provide a valid basis for the denial of disability benefits.
 
 
 14
 Because we have no doubt that Goldman is incapable of performing any substantial gainful activity, as required by 42 U.S.C. Sec. 423(d)(2)(A), we are compelled to reverse.
 
 
 15
 Accordingly, the decision of the Secretary is reversed.
 
 WELLFORD, Circuit Judge, dissenting:
 
 16
 I must respectfully dissent from the majority's reversal of the Secretary's decision. Although the majority properly notes that Goldman cannot qualify for widow's disability benefits unless she suffers from a listed impairment or from one or more unlisted impairments that singly or in combination are the equivalent of a listed impairment, Wokojance v. Weinberger, 513 F.2d 210, 212 (6th Cir.), cert. denied, 423 U.S. 856 (1975), there is a failure to explain how Goldman's impairments satisfy this requirement. We previously have held that a widow cannot establish entitlement to benefits unless she shows her impairment through specific clinical findings. Dorton v. Heckler, 789 F.2d 363, 365 (6th Cir.1986). The Secretary's regulations require that the diagnosis of a listed impairment be established "on the basis of medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. Sec. 404.1525(c). Likewise, a determination of medical equivalence must be based solely on medical findings supported by medically acceptable clinical and laboratory diagnostic techniques, 20 C.F.R. Sec. 404.1526(b), and we have recognized the "necessity for a showing of specific alternate medical symptoms" to demonstrate medical equivalence. King v. Heckler, 742 F.2d 968, 974 (6th Cir.1984).
 
 
 17
 A review of the record in this case demonstrates that the specific clinical findings regarding Goldman's impairments are equivocal and that the ALJ's finding that Goldman has failed to meet the burden of showing her entitlement to benefits is supported by substantial evidence. As the majority notes, a cardiac catheterization performed on Goldman in April 1978 showed the left ventricle contracting hyperkinetically, i.e., more vigorously than normal. Hyperkinetic heart syndrome indicates an abnormal increase in the heart's muscular activity, which could lead to an above normal cardiac output and an increased rate of blood circulation, see J. Schmidt, Attorney's Dictionary of Medicine H-149, 150 (1988), but the majority does not indicate how this diagnosis supports a finding of a listed impairment or the medical equivalent thereof. The same 1978 catheterization was read as showing the coronary arteries to be within normal limits. The records of a hospital admission for abdominal pain in early 1981 contain no notation of any kind of heart condition. Chest x-rays performed in May 1983 and May 1984 were negative, the latter showing a heart normal as to size and configuration. EKGs performed in June 1984 showed no ischemic changes or unusual arrythmias. Although Goldman was found to exhibit tachycardia (rapid heart beat) on at least two occasions, on several other examinations her physicians described her heartbeat as regular in rate and rhythm, and without murmurs.
 
 
 18
 Goldman's descriptions of her claims about symptoms of congestive heart failure, coronary artery disease, and cardiac arrythmia have not always been consistent. For example, in March 1984 she complained that her chest pain radiating to her arms had continued for the past fifteen years, but denied any heart palpitations. By contrast, in May 1984 she denied a history of chest pain, but stated a positive history for palpitations.
 
 
 19
 Finally, although Dr. Bates' participation in the administrative hearing may be viewed as perhaps exceeding the neutral, explanatory role of medical advisor, his evaluation of Goldman as suffering primarily from a non-psychotic emotional disorder is supported by the opinion of Dr. Morris, one of Goldman's treating physicians, that her complaints had an "enormous psychophysiologic overlay." I would conclude that Dr. Bates' testimony and the ALJ's reliance on it do not preclude a finding of supportive substantial evidence in this case.
 
 
 20
 Dr. Morovitz aptly summed up why Goldman has not obtained benefits: "Patient presents an overwhelming history of illnesses without much documentation on the records supplied." (Emphasis added). Although the result may at times be harsh, we require specific clinical documentation of diagnoses meeting or equaling a listed impairment in order for a claimant to prove entitlement to widow's disability benefits. Because Goldman has not provided such documentation and because the nature of her heart condition is at best uncertain, I would affirm the Secretary's decision.
 
 
 
 *
 The Honorable James H. Jarvis, United States District Judge for the Eastern District of Tennessee, sitting by designation